406 So.2d 577 (1981)
Charles Edward KLOHN
v.
LOUISIANA POWER & LIGHT.
No. 81-C-1233.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied December 14, 1981.
William P. Brumfield and H. Alva Brumfield, III, of Brumfield & Brumfield, Baton Rouge, for defendant-applicant.
John H. Musser, IV; Eugene G. Taggert, of Monroe & LeMann, New Orleans, John F. Pugh, Jr., of Pugh, Lanier & Pugh, Thibodaux, for plaintiff-respondent.
CALOGERO, Justice.
The issue presented in this tort suit is whether summary judgment for defendant should have been granted declaring that plaintiff's exclusive remedy is under the worker's compensation statute. Resolution of this question depends on whether defendant, City of Thibodaux, has shown that there is no genuine issue as to a material fact, i.e. that the work plaintiff was performing at the time of his injury was either work which was "a part of [the City's] trade, business or occupation or which [it] had contracted to perform." La.R.S. 23:1061.
Plaintiff, Charles Edward Klohn, was an employee of Cooper Energy Services, Inc. Cooper had contracted with Louisiana Power and Light to torque the head of a cylinder at the electrical power plant LP&L was operating for the City of Thibodaux. The City owned the power plant, but pursuant to an "Operating Agreement" entered into between the City and LP&L, commencing *578 on November 12, 1976, LP&L operated the plant. Klohn was injured on June 27, 1979 when he fell through a hole on a grated walkway while working at the plant.
Plaintiff initially filed a tort action against LP&L. He later amended his petition to include the City of Thibodaux and several employees of LP&L. All defendants filed motions for summary judgment. LP&L's, and its employees' motions were granted and the tort suit against them was dismissed upon the trial court's finding that LP&L was plaintiff's statutory employer. (That ruling is not presently before us.)[1] The City's motion was taken under advisement and later also granted upon a finding by the trial judge "that LP&L was and is operating the power plant as the city's agent ...," and consequently that the City was in the business of providing electric service at the time of plaintiff's accident; that the City was, therefore, the statutory employer of the plaintiff.
The Court of Appeal 401 So.2d 377 (La. App. 1st Cir. 1981) affirmed the trial court ruling, finding that the City was still "in the business of producing electricity" and had only turned over the operation of the power plant to its operating agent, LP&L.
We granted writs to review the lower court rulings mainly because of plaintiff's assertion that there was a genuine issue as to a material fact concerning whether the City was still in the business of providing electric service. Plaintiff contends that at trial on the merits he can prove that at the time of the accident, having entered into the "Operating Agreement" with LP&L, the City no longer had any part in operating the power plant and had in fact ceased to retain any connexity with the trade, business or occupation of providing electrical service.
Prior to our consideration of this issue on the merits, there is a preliminary matter which must be considered. Defendant has filed a motion in this Court to supplement the record. Particularly, defendant is requesting that the bond resolution[2] referred to in the "Operating Agreement" be added to the record in this case and considered in determining whether the lower courts erred in granting defendant's motion for summary judgment.
In his reasons for judgment, the trial judge made reference to the bond resolution. It is argued that the trial judge had the authority, under La.R.S. 13:3712, to take judicial cognizance of the bond resolution and that it should, therefore, be considered by this Court as part of the record in the case.
La. R.S. 13:3712, concerning the trial court's authority to take judicial notice of certain matters, provides in pertinent part:
B. All courts of record in the state shall take judicial cognizance of the municipal ordinances and parochial ordinances which may be enacted by governing authority of any town, city, municipality, or parish within their respective jurisdictions whenever certified copies of such ordinances have been filed with the clerk of said court.
Since the bond resolution qualifies as a municipal ordinance, having been enacted by the governing authority of the municipality, City of Thibodaux, and further, since *579 a certified copy of the bond resolution was filed with the clerk of the district court, it is argued that the trial judge properly took judicial notice of it. Plaintiff does not dispute the above contentions but rather argues that this Court should not now allow supplementation of the record with the certified copy of the bond resolution. He contends that if supplementation of the record with the bond resolution is deemed appropriate, then the case should be remanded to the trial court to have the document admitted there.
Plaintiff argues that to allow supplementation of the record in this Court with a copy of the bond resolution severely prejudices him because the reference to it by the trial judge provided plaintiff with the first notice he had of the document and its relevance to the proceedings.
We are not persuaded by plaintiff's argument that he is prejudiced by consideration of the document by this Court. In numerous instances throughout the "Operating Agreement" reference is made to the bond resolution (not merely reference to its existence but rather reference to its substance), making it a part of the operating agreement. (LP&L was required to maintain such insurance as was required by the bond resolutions; LP&L was required to make such monthly payments as were required by the bond resolution; the bond resolution could not be violated in any way.) Upon reading the "Operating Agreement" it had to have been obvious to plaintiff that the bond resolution was an integral part of the agreement between the City of Thibodaux and LP&L and that it was substantially relevant.
R. S. 13:3712, authorizing trial courts to take judicial notice of municipal ordinances is applicable generally, including in proceedings upon motion for summary judgment. The trial court therefore properly considered the bond resolution, certified copy of which is shown to have been filed with the clerk of the district court, notwithstanding that the instrument was not introduced and filed as an independent exhibit in the trial court. That the trial judge did in fact take judicial notice of the bond resolution is evident from his reference to it in his reasons for judgment on the motion.
For purpose of an appellate court's review, however, it is incumbent upon the party relying thereon to make part of the appellate record a certified copy of the ordinance of which the trial judge took judicial notice. That copy should be made part of the record either before its lodging in the appellate court or, as in the case at hand, by the filing of a motion to supplement the record in the appellate court. Absent a suggestion by his opponent that the document does not represent a certified copy or that the document was not properly filed of record in the office of the clerk of the district court, it is appropriate to allow the requested supplementation. The motion to supplement the record with the bond resolution is therefore granted.
Turning now to the merits of the case, that is, whether the trial court erred in granting defendant's motion for summary judgment, the law is clear that a motion for summary judgment should be granted where it is shown that no genuine issue of material fact exists and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981); Cates v. Beauregard Electric Coop., 328 So.2d 367 (La.1976). The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Mashburn v. Collin, 355 So.2d 879 (La.1977). And where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Duvalle v. Lake Kenilworth, supra.
Defendant argues that the pleadings, together with the affidavit of C. D. Clement, the "Operating Agreement," and the certified copy of the bond resolution, establish that there is no genuine issue as to any material fact and that the City is entitled to a judgment as a matter of law. *580 Plaintiff, on the other hand, contends that on a trial on the merits he can prove that the City had no control over the operation of the power plant and thus there is a genuine issue as to a material fact, and summary judgment was improperly granted.
Plaintiff's argument is without merit, for his only asserted material fact is not in contest but, rather, admitted by the City. In Mr. Clement's affidavit, filed by the City, it is admitted that "the exclusive operational control of the municipal power plant on that date [the day of plaintiff's accident] was in the hands of the Louisiana Power and Light Company by virtue of the agreement entered into November 3, 1976 between the City of Thibodaux and Louisiana Power and Light Co." There is no genuine issue as to the material facts presented in this case.
In order for defendant to succeed under its motion as framed, it must be undisputed that the City of Thibodaux was a principal, or plaintiff's statutory employer under La. R.S. 23:1061 and La. R.S. 23:1032.
La. R.S. 23:1061, concerning when an employer will be considered a principal, provides in pertinent part as follows:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed, (emphasis provided.)
La. R. S. 23:1032, concerning the exclusiveness of the compensation remedy, provides in pertinent part as follows:

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer orprincipal, for said injury, or compensable sickness or disease. For purposes of this Section, the work "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.[3] (emphasis provided)
Under the above statutes, the City will be considered plaintiff's principal if it is one who "undertakes to execute any work which is a part of his [the City's] trade, business or occupation or which he [the City] had contracted to perform and contracts with any person [LP&L, which in turn contracted with Cooper Energy Services, Inc.] (in this section referred to as contractor) for the execution by or under the contractor [LP&L and Cooper] of the whole or any part of the work undertaken *581 by the principal [the City] ...." In other words, if plaintiff, under his employer's contract with LP&L, was executing the whole or any part of the work undertaken by the City either because the work was part of the City's trade, business or occupation or because the City had contracted to perform the work, then the City would meet the definition of principal and be plaintiff's statutory employer, thereby limiting plaintiff's remedy to worker's compensation.
The City of Thibodaux owned and had operated the electrical plant for a number of years prior to plaintiff's accident. In 1963 the Board of Trustees of the City of Thibodaux passed a resolution authorizing the issuance of bonds to enable the City to raise money for improvements, repair and expansion of the utilities system (the electric power plant and the waterworks plant). Since that time, the Board of Trustees has authorized the issuance of bonds for the same purpose on several different occasions. The bonds were issued upon the condition that the City not sell or lease the utilities system.
Section 16 of the bond resolution provides in pertinent part:
That so long as any of the bonds herein authorized are outstanding and unpaid in principal or interest, the City shall be bound and obligated not to sell, lease, encumber or in any manner dispose of the Utilities System or any substantial part thereof;
Under this clause of the bond resolution the City is required to retain ownership of the Utilities System and is responsible for insuring the operation of the electric and water systems. The City's ultimate responsibility for the operation of the Utilities System is especially clear when this clause, prohibiting the lease of the plant, is read in conjunction with other clauses of the bond resolution prohibiting the City from granting a franchise to any competing utility company, requiring the City to maintain insurance on the Utilities System, requiring the City to maintain financial books and records on the expenditures of the Utilities System, requiring the City to control the rates that may be charged for services furnished by the Utilities System, and holding the City liable in the event of default on the bonds.
In accordance with the City's duty under the bond resolution to insure the operation of the electric system, the City upon concluding that it would be more advantageous to the City and its residents to have the electrical plant operated with the assurance of paying off the bonds, entered into an "Operating Agreement" with Louisiana Power and Light. Plaintiff argues that when the City entered this agreement with LP&L it was no longer in the trade, business or occupation of providing electric service. We do not agree.
As stated above, under the bond resolution, the City was obligated to continue to operate the Utilities System as long as any of the authorized bonds were outstanding and unpaid. It was for this reason that the City entered into the contract with LP&L as its agent, whereby LP&L would operate the electric power plant on behalf of the City. While it is true that under the "Operating Agreement" the parties agreed that LP&L as the City's agent, would have complete control over the operation of the electric branch of the Utilities System, it was with the proviso that LP&L not violate any of the conditions of the bond resolution, and that LP&L make the required payments on the bonds and an additional sum to the City. Since the primary liability for the bond payments remained in the City, the City retained an interest in the operation of the power plant, and did not remove itself from the electric and/or water utilities business when they entered into the "Operating Agreement" with LP& L.
To the contrary, the City retained the ownership of the electric plant and was prohibited from selling, leasing, encumbering or in any way disposing of it. The City had the obligation under the bond resolution not to divest itself of the Utilities System or the responsibility for providing electric and water service to its residents. The City merely chose to comply with the *582 bond resolution and its obligations under them in a manner which it deemed financially advantageous, that is, by contracting with LP&L to operate the power plant or execute a part of the work the City had an obligation to perform. The City remained responsible for the operation of the plant and in the event LP&L were to cease to operate it, the City would again be required to operate the plant with its own employees or make some other arrangements. Operation by the City of the waterworks system was not directly affected by the agreement with LP&L. As long as LP&L operated the electric plant the City benefited from the operation thereof because LP&L was required to meet the bond payments (which would otherwise have come partially from the revenues of the waterworks plant) and to pay the City at least $140,000.00 annually. LP&L used the City's materials, supplies, tools, automotive and vehicular equipment, rights of way and servitudes in operating the power plant. The City was to retain the previously paid customer deposits for the duration of the operating agreement and was responsible for refunding any deposits to those customers who might cancel their electric service during that period. The City retained the responsibility for maintaining financial records on the Utilities System, including the electric plant. Finally, it was provided in the operating agreement that the City would have to pay LP&L for any additions, improvements or replacements made by LP&L to the power plant upon termination of the operating agreement.
Therefore, after reviewing the pleadings, affidavits, "Operating Agreement" and bond resolution, we conclude that the City was obligated to operate the Utilities System, including electric, as long as there were outstanding bonds, that the City did operate the electric system for several years, and that the City remained in the trade, business or occupation of providing electric service notwithstanding the fact that it contracted with LP&L for the execution by LP&L "of the whole or any part of the work [it had] undertaken." Since the City was in the trade, business or occupation of providing electric service at the time of plaintiff's accident, and the work plaintiff was performing was in furtherance of that business, the City was a principal, or plaintiff's statutory employer. Under La. R.S. 23:1032 plaintiff's exclusive remedy against the City of Thibodaux is under the worker's compensation statute; summary judgment in favor of defendant, dismissing plaintiff's tort suit, was properly granted.

Decree
For the foregoing reasons, we affirm the lower court rulings granting defendant's motion for summary judgment.
AFFIRMED.
DENNIS, J., dissents with reasons.
LEMMON, J., dissents.
NOTES
[1] The trial court concluded that plaintiff Klohn was an employee of Cooper Energy Services, Inc., and that Cooper had contracted with LP&L to perform certain services for LP&L concerning the City of Thibodaux's power plant. It was further found that the work plaintiff was performing at the time of his injury, mechanical work and repairs to the diesel engines, was work that was being executed pursuant to the contract between Cooper and LP&L, and that the work was an integral and necessary part of the regular trade business and occupation of LP&L in operating the power plant. The Court of Appeal affirmed that ruling. Klohn v. LP&L, 394 So.2d 636 (La.App. 1st Cir. 1980). This Court denied writs from the Court of Appeal judgment and that judgment is therefore final.
[2] The bond resolution authorized the issuance of $1,300,000.00 of "Utilities Revenue Bonds" of the City of Thibodaux to raise money for the operation of the Utilities System (the waterworks and electrical plants). It also outlined the details for repayment of the bonds as well as certain covenants and agreements concerning the security for the bonds.
[3] Although there seems to have been at least some question in the past as to whether tort immunity should be extended to a principal [See Broussard v. Heebe's Bakery, 263 La. 561, 268 So.2d 656 (1972), Tate, J., concurring at 263 La. 575-77, 268 So.2d 661] that question has been legislatively resolved by the 1976 amendment to La. R.S. 23:1032, codifying the principal's tort immunity. See Malone & Johnson, Louisiana Civil Law Treatise, Workers' Compensation, 128 (1980).