WARD, Judge.
In January 1978, while James Devane was employed by the New Orleans Public Grain Elevator as a maintenance electrician, he injured his legs and ankles when he fell through a hole on the turnhead floor of the elevator and landed on the next floor. Although Devane was paid worker’s compensation benefits by the Public Grain Elevator, his immediate employer, he brought a tort suit against the Board of Commissioners of the Port of New Orleans. The suit against the Port of New Orleans was dismissed in a summary judgment in the District Court, and Devane has appealed.
The issue in this appeal is a question of definition. Is the Port of New Orleans a principal, commonly known as the statutory employer, of Devane as defined by La.R.S. 23:1061? If the Port of New Orleans is the statutory employer of Devane, as the Trial Judge determined, the summary judgment was proper because a principal (statutory employer), while liable for worker’s compensation to an injured statutory employee, is immune from third party tort suits by the injured employee. LSA-R.S. 23:1032. The language of the statute defines a principal (statutory employer):
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him....
*1003 Devane first argues that the Trial Judge erred in holding that the Port of New Orleans was a statutory employer because there was not a relationship of principal-contractor between the Port of New Orleans and the Public Grain Elevator, but, instead, the relationship was one of lessor-lessee. On the other hand, the Port of New Orleans contends that it is a principal as the word is defined by LSA-R.S. 23:1061 and, therefore, is immune from this tort suit by Devane.
This Court has previously considered the same issue in Schmolke v. Krauss Company, 217 So.2d 789, 791 (La.App. 4th Cir., 1969) and has clearly held that a contract of lease may establish a contractual relationship which makes the lessor a principal (statutory employer) within the meaning of LSA-R.S. 23:1061.
If plaintiff were seeking workmen’s compensation rather than damages in tort, we would have little difficulty in tracking the quoted, statute, by saying Krauss did undertake the operation of a shoe department, which is part of its trade or business of operating a department store, and contracted with Katz for the execution by Katz of the operation of the shoe department.
The liberal construction of the Workmen’s Compensation Act required to accomplish its humane purpose by including all workmen reasonably afforded its protection must equally be applied when an injured person seeks exclusion from the act in order to seek damages in tort; Spanja v. Thibodaux Boiler Works, 2 So.2d 668 (La.App.1941).
Krauss and Katz may be lessor and lessee, but they are additionally principal and contractor within Section 1061. An ordinary lessor is not his lessee’s principal, because the ordinary lessor does not undertake to perform part of his trade or business by contracting with his lessee to execute it, as Krauss did. Thus simple lessor-lessee cases like Fouchaux v. Board of Com’rs of Port of New Orleans, 193 La. 182, 190 So. 373 (1939), are not controlling here.
Moreover, the Supreme Court has defined what is meant by “principal” under the compensation statute in the case of Klohn v. Louisiana Power and Light, 406 So.2d 577, 580 (La.1981) where it stated:
. . . For purposes of this Section, the word “principal” shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Although in that case the contract was an operating agreement, not a lease, the definition is applicable, and we hold that a lease may clearly fall within the definition when the lease contract requires that the lessee execute work which the lessor had previously undertaken as part of the lessor’s trade or business.
Devane next argues that operation of a grain elevator is not the business of the Port of New Orleans, and hence, for this reason also, it does not come within that part of the definition of principal. The part of LSA-R.S. 23:1061 which is relied on by Devane defines “principal”:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person....
Authority for the operations of the Port is legislatively granted by LSA-R.S. 34:1 et seq. LSA-R.S. 34:21 contains the specific authorization for the Port “to finance, erect and operate all basins, locks, canals, and warehouse elevators... . ”
In 1964, the Port of New Orleans entered into a lease with the Public Grain Elevator. The lease provided that the Public Grain Elevator would lease the grain elevator facility from the Port of New Orleans and continue to operate the facility, which is but one operation among the extensive, complex activities granted by statute to the Port of New Orleans. The lease also pro *1004 vided that the cost for renting the facility would be based on the number of bushels of grain handled by the Public Grain Elevator; the lease estimates the number of bushels of grain anticipated to be delivered per year. By this agreement, the Port of New Orleans contracted with the Public Grain Elevator to carry out the operation of the grain elevator facility, an operation which is clearly part of the “trade or business” of the Port of New Orleans.
We, therefore, find that the Port of New Orleans undertook to execute work which it had a statutory duty to perform and which is part of the business of the Port by contracting with the Public Grain Elevator for performance of that work, and although the relationship arises from a lease, the relationship is one of principal-contractor within the clear meaning of LSA-R.S. 23:1061.
Hence, the Port of New Orleans is a principal (statutory employer) and is immune from the third party tort claims of Devane, its statutory employee.
We hold that the Trial Judge did not err when he granted a summary judgment, and we affirm.
AFFIRMED.