Dwight S. RIVERA, Plaintiff-Appellant,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Defendant-Appellee.

No. 89-3412
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1990.

Allain F. Hardin, Wiedemann & Fransen, New Orleans, La., for plaintiff-appellant.

Brian A. Jackson, Asst. U.S. Atty., New Orleans, La., for defendant-appellee.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

In this Federal Tort Claims Act (FTCA) suit, plaintiff-appellant Dwight S. Rivera

(Rivera) appeals the district court's summary judgment in favor of defendant-appellee United States Army Corps of Engineers (the Corps) granted on the basis that the Corps was Rivera's statutory employer under LSA–R.S. § 23:1061. We conclude that the summary judgment evidence does not establish this defense as a matter of law, and accordingly we reverse and remand.

At the time of his injury, Rivera was employed by Bayou State Security Services, Inc. (BSSI) as a security guard. BSSI was under contract to the United States—apparently acting through the Corps, although this is not entirely clear—to provide security services for the Corps at its New Orleans District Office, which was apparently an office building located at the foot of Prytania Street in New Orleans. It appears that the Corps owned this building. Rivera sustained his injuries when, in the course of his employment with BSSI, he was serving as a security guard at the office building and was injured when he leaned backward in a chair there and fell to the floor. The chair was owned and maintained by the Corps, which apparently made it available to the BSSI guards for their use. Rivera alleged that the United States was negligent in failing to maintain the chair in a safe condition and in making it available when it was unsafe to sit in.

▮ Under the FTCA, the United States is liable only as a private person would be liable in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). Under Louisiana law, the principal for whom a contractor is performing work is not liable in tort for injuries caused by the principal's negligence and suffered by the contractor's employees in the course of that work, if the work is part of the principal's "trade, business, or occupation." In these circumstances, the principal, as the "statutory employer" of the injured employee, is liable to the injured employee only under the Louisiana workmen's compensation law. LSA–R.S. §§ 23:1032; 23:1061. This rule likewise applies to the United States when it is sued under the FTCA. *Thomas v.*

*Calavar Corp.,* 679 F.2d 416, 418–19 (5th Cir.1982).

▮ The issue is accordingly whether Rivera was injured while doing work that is part of the "trade, business, or occupation" of the United States. *Id.* We conclude that the record before us does not demonstrate with sufficient certainty that Rivera's work was part of the "trade, business, or occupation" of the United States to authorize summary judgment on this basis.

Where the statutory employer defense has been sustained in FTCA cases, there has generally been demonstrated a relatively close nexus between the work the injured employee was furthering and one or more of the missions provided by law of the governmental agency in question. For example, in *Thomas,* the employee was working for a government contractor who was converting an underground salt cavern into a storage site for crude oil as part of the Strategic Petroleum Reserve project. This work was being done under contract with the Department of Energy (DOE) pursuant to its statutory responsibility to construct such storage facilities. In holding that the statutory employer defense was made out, we stated: "The contractor in this case was merely an instrument to perform the work required by DOE's mission under the Energy Policy and Conservation Act." *Id.* at 420. There, we likewise relied on *Scales v. State,* 411 So.2d 658 (La.App. 1982), which reached the same result in a situation which we characterized as "state agency fulfilled its statutory mission through contractor." *Thomas,* 679 F.2d at 420. *Thomas* also relied on the decision in *Klohn v. Louisiana Power & Light,* 406 So.2d 577 (La.1981), where the city was obligated under its outstanding bonds to continue to own and operate its electric plant, and contracted with Louisiana Power & Light to operate the plant in behalf of the city. In *Leigh v. National Aeronautics and Space Administration,* 860 F.2d 652 (5th Cir.1988), we dealt with a situation where the contractor's employee was performing a test on the liquid oxygen portion of the external tank of the space shuttle, work which was done pursuant to a con-

tract between the worker's employer and the National Aeronautics and Space Administration (NASA). We held that the statutory employer defense shielded NASA from FTCA suit because production of the space shuttle was a statutorily mandated part of NASA's business. *See* 42 U.S.C. §§ 2452(1)(B); 2473(a)(1); 2473(b)(3).

However, this does not mean that whatever the United States is authorized to contract for is necessarily a part of the "trade, business, or occupation" of the United States. Were this to be the case, the statutory employer defense would be the exception which swallowed the rule. We recognized as much in *Thomas*, where we stated:

> "The United States does not contend that it would be a principal or statutory employer ... whenever a federal agency is authorized to contract for particular work, and we do not suggest that result.... Rather, as with employers generally, its status as a statutory employer must be determined on the facts of each case." 679 F.2d at 420 (footnote omitted).

■ Here, nothing appears in the record or is called to our attention which makes it a part of the mission of the Corps to provide security for its office building. The government calls attention to 33 U.S.C. § 701b, which provides: "Federal investigations and improvements of rivers and other waterways for flood control and allied purposes shall be under the jurisdiction of and shall be prosecuted by the Department of the Army under the direction of the Secretary of the Army and supervision of the Chief of Engineers...." It is not clear what these provisions have to do with providing security to an office building. Attention is further directed to the provisions of 33 U.S.C. § 701b–10 that

> "[t]here is established a revolving fund, to be available without fiscal year limitation, for expenses necessary for the maintenance and operation of the plant and equipment of the Corps of Engineers used in civil works functions, including the acquisition of plant and equipment, maintenance, repair, and purchase, oper-

ation, and maintenance of not to exceed four aircraft at any one time...."

Again, while this generally authorizes the expenditure of funds for the maintenance of the Corps' plant, it does not clearly make office building security a part of the mission of the Corps. Reliance is also placed on the provision of the Energy and Water Development Appropriation Act of 1984 which authorized the Corps to acquire this office building (97 Stat. 247, 249) as follows:

> "To enter into a purchase contract for the acquisition of new buildings and pertinent facilities for the United States Army Engineer District, New Orleans, Louisiana. Such buildings and facilities shall be constructed on a site presently occupied by the Engineer District under a long term right of use donated by the Board of Commissioners for the Port of New Orleans."

Again, this merely authorizes the Corps to acquire this office building. The fact that the Corps is authorized to acquire this office building does not necessarily mean that providing office building security is part of the Corps' mission. Again, as we pointed out in *Thomas*, simply because the agency may be authorized to contract for the activity in question does not necessarily mean that it is part of its regular "trade, business, or occupation," as opposed to being incidental thereto. Presumably, all government contracts are authorized.

The Corps places special reliance on our decision in *Hebert v. United States*, 860 F.2d 607 (5th Cir.1986). That brief, two-sentence affirmance under our Rule 47.6 merely states that the decision in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La.1986), does not modify *Klohn* or *Thomas*. We, of course, agree and in any event are bound by *Hebert;* but neither *Klohn* nor *Thomas*—nor *Leigh*—mandates affirmance in this case. The Corps likewise relies on the unpublished opinion of the district court in *Hebert.* That opinion shows that the plaintiff there was the employee of a subcontractor at the same facility as ·was involved in *Leigh*, where the external fuel tank of the space shuttle was

**570**

being constructed. The subcontractor in question was installing and furnishing closed-circuit television screens to be used as part of an emergency warning system at the facility. The district court determined that the emergency warning system was an integral and vital part of the operation, maintenance, and functioning of the facility. NASA, the governmental agency involved, had as a part of its statutory mission the charge to "construct, improve, repair, operate, and maintain laboratories, research and testing sites and facilities, aeronautical and space vehicles, quarters and related accommodations for employees...." 42 U.S.C. § 2473(c)(3). NASA was also charged with the duty to "conduct aeronautical and space activities," 42 U.S.C. § 2473(a)(1), and "aeronautical and space activities" were defined so as to include "the development, construction, testing, and operation for research purposes of aeronautical and space vehicles." 42 U.S.C. § 2452(1)(B). The facility in question was that created to produce the external tank of the space shuttle. The contracting in *Hebert,* thus, was part of NASA's statutory mandate to construct and improve facilities to create the space shuttle. Though the nexus in *Hebert* between the contracted for work and the agency mission may be somewhat less close than in cases such as *Thomas* and *Leigh,* nevertheless it seems to us to be substantially closer than the nexus between Rivera's work and the mission of the Corps.

On this issue, we believe that the record is simply too skimpy to conclusively demonstrate that the statutory employer defense has been made out as a matter of law. *Cf. Blanchard v. Engine & Gas Compressor Servs.,* 613 F.2d 65, 73 (5th Cir.1980). We cannot say that it has been demonstrated as a matter of law that the furnishing of such security to a Corps office building "is part of ... [the Corps'] usual and customary business." *Thomas,* 679 F.2d at 420. However, our reversal does not necessarily preclude a judgment for the Corps on this basis after fuller development at trial, or even by further summary judgment evi-

dence. We speak only to the record as it is now before us.

Accordingly, the judgment of the district court is reversed and the cause is remanded for further proceedings not inconsistent herewith.

REVERSED and REMANDED.