**Michael J. KNOTTS and Beverly Gail Knotts, Plaintiffs–Appellants, Cross–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellee, Cross–Appellant.**

No. 89–4162.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1990.
Rehearing Denied March 12, 1990.

Dorwan G. Vizzier, Broussard, Bolton, Halcomb & Vizzier, Alexandria, La., for plaintiffs-appellants, cross-appellees.

John R. Halliburton, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., Peter Maier, John F. Cordes, Robert Lobe, Dept. of Justice, Washington, D.C., for defendant-appellee, cross-appellant.

Before RUBIN, REAVLEY and KING, Circuit Judges.

PER CURIAM:

After determining that the United States, as defendant, was at fault in causing personal injuries to the plaintiff, the district court apportioned ninety percent of the fault to the victim and held that certain of the consequential damages claimed by his ex-wife were not proximately caused by the accident. The victim and his former wife appeal both rulings and the United States, also dissatisfied with the judgment, contends that the district court erred by failing to find that it was the victim's "statutory employer," and hence, immune from tort liability under state law. Because the district court judgment is amply supported by the record, we affirm.

## I.

In 1982, the Department of the Air Force awarded a contract to Transformer Service of Ohio, Inc. (TSI), an electrical contractor, to perform various tests on the dielectric materials contained in electrical transformers at the England Air Force Base near Alexandria, Louisiana. These materials insulate the transformer. The purpose of one of these tests was to check the materials for PCB contamination, a check required by recently promulgated EPA regulations.[1] TSI assigned two of its employees, Michael Knotts and his supervisor, to the job.

After having completed most of the testing required by the contract, Knotts and his supervisor attempted to take a sample of dielectric fluid from transformer 3032. Following their usual procedure, the two men asked the Air Force technician who accompanied them to open the doors at opposite ends of the transformer housing and to pull the "fuse disconnect" switch. Although throwing that switch "deenergized" the transformer itself, electrical current continued to flow to several pieces of equipment attached to the housing. Despite warnings from the technician that this current created a hazard to them and their knowledge that the current could have been stopped by throwing another switch farther "up the line," the men proceeded to take the sample.

Because the mechanism fastening down the lid of the transformer was accessible only from the door on the north side, Knotts, who had assumed responsibility for taking the sample, entered the housing through that door. After removing the lid, Knotts continued to work at that side of the housing, although the south door was located farther from the energized equipment. Without covering the equipment with a rubber blanket that was on hand, a

procedure that might have insulated him from contact with the equipment, Knotts withdrew the sample. As he prepared to back out of the housing, he inadvertently contacted the equipment and, as a result, suffered severe burns.

Invoking the Federal Tort Claims Act (FTCA),[2] Knotts and his ex-wife sought to recover damages from the United States. The United States responded by filing a motion for dismissal or summary judgment, based principally on the contention that under the law of Louisiana, which provides the substantive basis for the Knottses' claims under the FTCA,[3] the United States was Knotts's "statutory employer" and, as such, enjoyed immunity from tort liability.[4] The district court denied the motion, finding that there were material issues of fact regarding whether the contract work was within the scope of the Air Force's trade, business, or occupation, the critical question in determining whether the United States was Knotts's statutory employer under Louisiana law.[5] After a bench trial, the district court found both Knotts and the United States negligent, but nevertheless apportioned one hundred percent of the fault to Knotts.

Both Knotts and his former wife appealed. Concluding that the district court's finding that the United States had been negligent was inconsistent with its decision to apportion all of the fault to Knotts, we vacated the judgment and remanded the case for reapportionment of fault and determination of damages.[6] On remand the district court apportioned ninety percent of the fault to Knotts and ten percent to the United States. Fixing Knotts's damages at $720,097, the court entered judgment in his favor for $72,009.70. The court also awarded Mrs. Knotts $5,000 for her loss of consortium during the period after the acci-

1.  44 Fed.Reg. 31514, 31517–31518.

2.  28 U.S.C. §§ 1346(b), 2671–80 (1982 & Supp. V 1987).

3.  See Rivera v. United States Army Corps of Engineers, 891 F.2d 567, 568 (1990).

4.  See La.Rev.Stat. Ann. §§ 23:1032, 23:1061 (West 1985); Berry v. Holston Well Service, Inc.,

488 So.2d 934, 936–37 (La.1986); 13 W. Malone & H. Johnson, Louisiana Civil Law Treatise—Workers' Compensation § 128 (1980).

5.  See Rivera, 891 F.2d at 568.

6.  Knotts v. United States, 823 F.2d 550 (5th Cir. 1987).

dent and before her divorce from Knotts. Finding, however, that the accident had not caused the divorce, the court refused her demand for damages stemming from the dissolution of the marriage.

Both Knottses again appeal, this time complaining that the district court erred in apportioning ninety percent of the fault to Knotts and in finding that the accident was not a proximate cause of their divorce. The United States likewise appeals, contending that the district court erred in denying its motion for dismissal or summary judgment. We begin with the United States' claim.

## II.

### A. The "Statutory Employer" Defense

■ The contention that the United States was Knotts's "statutory employer" under Louisiana law is foreclosed by our decision in the previous appeal. An appellate court decision rendered at one stage of a case constitutes the "law of the case" in all succeeding stages.[7] The first appellate opinion " 'establishes the law which other courts owing obedience to it *must,* and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case.' "[8] The scope of the doctrine, however, is limited: it "applies only to issues that were decided in the former proceeding and does not pertain [to] questions that might have been decided but were not."[9] Nevertheless, the doctrine encompasses issues decided by *"necessary implication"* as well those decided explicitly.[10]

In the previous appeal in this case, we implicitly decided the question whether the United States was Knotts's statutory employer. In its brief in that appeal, the United States maintained, "as an alternate theory [ ] in support of the judgment barring plaintiffs' claims for relief," that the lower court erred by not ruling that it was Knotts's statutory employer.[11] The statutory employer claim, therefore, was before us. Although we did not mention the United States' "alternate theory" in our opinion, we did consider it. As a general rule, a federal appellate court is obligated to uphold a lower court's determination, even though the lower court gave an incorrect reason for its action, if there is some other basis in the record for justifying that action.[12] Because the United States' statutory employer claim provided such an alternative basis for upholding the lower court's ruling, we were therefore bound to consider it. Upon considering the claim, we rejected it. That we did so is evident from our rejection of the United States' appeal: under the circumstances, our rejection of the appeal alone was necessarily an adverse ruling on all arguments presented in support of the statutory employer claim. Our conclusion that we rejected the claim, however, does not rest only on this effect of the judgment in our previous opinion. By remanding the case with instructions that the district court apportion fault between Mr. Knotts *and the United States,* we indicated, albeit tacitly, our rejection of the United States' claim of immunity.

For these reasons, we decline to consider, in this new appeal, the United States' contention that the district court should have

7. *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316, 1319 (5th Cir.1978); *Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 19 (5th Cir.1974).

8. *Morrow v. Dillard,* 580 F.2d 1284, 1289 (5th Cir.1978) (quoting 1B Moore's Fed.Prac.Dig. ¶ 0.404[1] (2d ed. 1974)); *see also Pegues v. Morehouse Parish School Bd.,* 706 F.2d 735, 738 (5th Cir.1983) (the doctrine "operates to foreclose re-examination of decided issues either on remand or on a subsequent appeal").

9. *Carpa,* 567 F.2d at 1320; *see also Pegues,* 706 F.2d at 738; *Morrow,* 580 F.2d at 1290; *Terrell,* 494 F.2d at 19.

10. *Morrow,* 580 F.2d at 1290; *Carpa,* 567 F.2d at 1320; *Terrell,* 494 F.2d at 19; *see also Trahan v. First Nat'l Bank of Ruston,* 747 F.2d 990, 991 (5th Cir.1984).

11. Brief for Appellee at 24, *Knotts v. United States,* 823 F.2d 550 (5th Cir.1987) (No. 87–4019).

12. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *Harris v. Edward Hyman Co.,* 664 F.2d 943, 945 (5th Cir.1981); *Stegmaier v. Trammell,* 597 F.2d 1027, 1038 (5th Cir.1979).

762

granted its motion for dismissal or summary judgment.

## B. Apportionment of Fault

Knotts argues that the district court erred by assessing him with ninety percent of the fault for the accident. This argument rests on two independent contentions. First, because his supervisors "forced" him to perform work that was inherently "unsafe" on pain of being discharged from his employment, his recovery for injuries sustained in the course of performing that work could not, under state law, be reduced through the application of principles of comparative fault.[13] Second, he was not in fact responsible for ninety percent of the damages that resulted from the accident.

We reject Knotts's first contention for two reasons. First, we are precluded from considering that contention for the same reason that we are precluded from considering the United States' statutory employer defense. In his brief in the previous appeal, Knotts argued that because he was under supervision at the time of the accident and had no reasonable alternative means of performing his work, he neither had "assumed the risk" of electrocution nor had been contributorily negligent.[14] By remanding the case for reallocation of fault between Knotts and the United States, we tacitly affirmed the lower court's ruling that Knotts's fault had contributed to the mishap and, therefore, also tacitly rejected his argument that, under the circumstances, he could not possibly have been contributorily negligent. That determination is the "law of the case" in this appeal[15] and accordingly may not be reexamined.

■ We would reach the same result even if we were to consider Knotts's first contention anew. In *Haas v. Atlantic Richfield*[16] we observed that under Louisiana law a supervised employee who sustains injuries in the course of performing work that he knows is perilous is regarded as having "assumed the risk" or as having been contributorily negligent, unless he had no reasonable means of avoiding the risk short of quitting his employment.[17] At the trial below, the parties introduced evidence that Knotts proceeded with his work although he was aware of the danger posed by the energized equipment and knew of several means of minimizing that danger or of avoiding it altogether. Neither party, however, produced any evidence suggesting that either Knotts's supervisor or the Air Force personnel on duty at the site precluded or even discouraged him from taking these risk-avoiding measures. In short, the evidence established that Knotts *voluntarily* performed his job-related responsibilities in a manner that he knew was unsafe.

■ Knotts's second contention is likewise unavailing. On review of a district court's apportionment of fault between the parties in a tort case, the court of appeals may not alter the apportionment unless it is convinced that the district court's determination was "clearly erroneous."[18] Admittedly, the evidence does show that the United States acted negligently in allowing Knotts to work within two feet of an uninsulated, exposed, energized piece of equipment, working conditions that did not conform to the National Electric Safety Code.[19] The evidence, however, supports the conclusion that Knotts's own negligent conduct was chiefly responsible for the accident. Witnesses for the United States testified that Knotts was fully aware that

---

**13.** *See Haas v. Atlantic Richfield,* 799 F.2d 1011, 1015–16 (5th Cir.1986); *Miller v. Employers Mut. Liab. Ins. Co.,* 349 So.2d 1353, 1361–62 (La. App.2d Cir.1977); *Chaney v. Brupbacher,* 242 So.2d 627, 632 (La.App. 4th Cir.1970).

**14.** Brief for Appellant at 19–30, *Knotts v. United States,* 823 F.2d 550 (5th Cir.1987) (No. 87–4019).

**15.** *See supra* notes 7–10 and accompanying text.

**16.** 799 F.2d 1011 (5th Cir.1986).

**17.** *Id.* at 1015–16.

**18.** Fed.R.Civ.P. 52(a); *Flowers Transp., Inc. v. M/V Peanut Hollinger,* 664 F.2d 112, 114 (5th Cir.1981); *Warner v. City of Bay St. Louis,* 552 F.2d 583, 585 (5th Cir.1977).

**19.** National Electric Safety Code Rules 422.B, 422.D (1981).

some of the equipment was energized and of the risk that the energized equipment presented. Other evidence indicated that Knotts knew of at least three means of minimizing or avoiding that risk—cutting off the power farther up the line; withdrawing the sample through the south door of the transformer housing, which was located farther from the energized equipment than was the north door; and covering the equipment with a rubber blanket that was at his disposal—but chose to take advantage of none of them. This evidence provides ample support for the district court's finding that although the United States' fault was "minimal and insignificant," that of Knotts was "egregious and substantial."

C. Causal Connection between the Accident and the Dissolution of the Marriage

 Mrs. Knotts maintains that the district court erred when it found that the accident was not a proximate cause of her divorce from Knotts and, therefore, that she was not entitled to damages stemming from the dissolution of the marriage. Whether a negligent act proximately causes certain damages is a question of fact; consequently, a court of appeals may not overturn a district court's findings with respect to such a question unless it determines that those findings are clearly erroneous.[20] Applying this standard of review, we affirm the district court's finding that Mr. Knotts's injuries were not causally connected with the short-circuit of the Knottses' marriage.

The evidence produced with respect to the possible causal connection between the accident and the divorce was in conflict. Mrs. Knotts put on evidence that Knotts's personality changed after the accident and that this change affected their relationship. On the other hand, the United States presented evidence that the couple had been experiencing interpersonal problems prior to the accident and that Mrs. Knotts

had not visited Knotts regularly during his lengthy hospital stay. The trial court's decision to give greater weight to the evidence of the United States was not clearly erroneous.

For these reasons, the judgment is AFFIRMED.

20. Fed.R.Civ.P. 52(a); *Sebree v. United States,* 567 F.2d 292, 294 (5th Cir.1978); *Pittman v.* *Gilmore,* 556 F.2d 1259, 1261 (5th Cir.1977).