**REVISED**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-20242
_____

In The Matter Of:  BRUCE BARTON SCHWAGER,

Debtor

--------------------------

BRUCE BARTON SCHWAGER,

Appellant,

v.

MEYER FALLAS; FRED FALLAS; WILLIAM CRAMER;
MALCOLM MARCOE,

Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

August 22, 1997

Before KING, GARWOOD, and PARKER, Circuit Judges.

KING, Circuit Judge:

Bruce Barton Schwager appeals the district court's affirming of the bankruptcy court's ruling that his debt from a state court judgment against him is nondischargeable under 11 U.S.C. § 523(a)(4).  He argues, *inter alia*, that the bankruptcy court improperly applied the doctrine of collateral estoppel to the jury's findings in the underlying state court judgment to

determine that his debt was nondischargeable.  We agree that the use of collateral estoppel was improper in this case, and thus, we reverse and remand.

## I.  BACKGROUND

The full details of this case are set forth in the state appellate court opinion, *Schwager v. Texas Commerce Bank, N.A.*, 827 S.W.2d 504 (Tex. App.—Houston [1st Dist.] 1992).  We will provide only a brief description of the facts that are pertinent to this decision.

In January 1984, Schwager, Fred Fallas, Meyer Fallas, Malcolm Marcoe, William Cramer, and Harvey Resnick formed a Texas limited partnership.  Schwager served as managing partner, and the others were limited partners.  The partnership purchased land in downtown Houston for the purpose of operating a restaurant.  The partnership financed its purchase of the Houston property with a loan from Interfirst Bank.  The restaurant operated at a loss, necessitating capital contributions from the limited partners.

In September 1984, Texas Commerce Bank (TCB) loaned the partnership $825,000.  The partnership applied $700,000 of the TCB loan to retire the Interfirst Bank loan and retained $125,000 as working capital.  By March 1985, the working capital was exhausted, and the limited partners were forced to make payments on the TCB note.  Eventually the limited partners stopped making these payments.

In 1986, litigation ensued in Texas state court among Schwager, the partnership, and the limited partners.  Ultimately, the trial court appointed a receiver.  In January 1987, after payments on the note again stopped, TCB accelerated the note.  TCB then sued Schwager and the limited partners in Texas state court.  Schwager filed various counterclaims.  The jury awarded compensatory damages against Schwager, finding, *inter alia*, that Schwager breached both the partnership agreement and his fiduciary duty to the limited partners.  Finding that Schwager's breach of fiduciary duty was "committed intentionally, maliciously or with heedless and reckless disregard of the rights of the limited partners," the jury also awarded exemplary damages in favor of the limited partners.  Finally, the jury found that Schwager fraudulently induced the limited partners to enter into the partnership agreement.  The trial court entered the judgment on December 8, 1989 ("the 1989 judgment").

Schwager appealed to the Court of Appeals for the First District of Texas, which, after allowing two re-briefings, struck forty-two of Schwager's forty-four points of error for failure to comply with the state appellate procedure rules.  Finding the remaining two claims to be without merit, the court of appeals affirmed the Texas trial court.  The Texas Supreme Court denied discretionary review, and the United States Supreme Court denied certiorari.  *Schwager v. Texas Commerce Bank, N.A.*, 827 S.W.2d 504 (Tex. App.—Houston [1st Dist.] 1992, writ denied), *cert. denied*, 113 S. Ct. 1844 (1993).

Schwager filed a petition for bankruptcy under chapter 7 in the U.S. Bankruptcy Court for the Southern District of Texas. Four of the limited partners[1] brought an adversary proceeding to establish that the damages awarded in the 1989 judgment were nondischargeable debts under 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6).[2] On February 15, 1995, the bankruptcy court granted summary judgment in favor of the limited partners.[3] The bankruptcy court concluded that Schwager was

___

[1] Harvey Resnick was not a party to the adversary proceeding.

[2] Bankruptcy Code § 523 provides exceptions to the general rule that all debts are dischargeable in bankruptcy. The three nondischargeability provisions at issue in this case are in § 523(a):

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --

   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --

      (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

   (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a).

[3] Schwager argues that summary judgment should not be permitted in the bankruptcy context because jury trials are not allowed. This argument is wholly without merit. Schwager cites no relevant authority for this novel proposition, and this court has previously affirmed summary judgments in nondischargeability proceedings many times. *See, e.g.*, *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996); *Garner v. Lehrer* (*In*

4

collaterally estopped from relitigating any of the issues determined in the 1989 judgment and, based on those facts, concluded that the entire judgment (both compensatory and exemplary damages) was nondischargeable under 11 U.S.C. § 523(a)(4). *Fallas v. Schwager* (*In re Schwager*), 178 B.R. 106 (Bankr. S.D. Tex. 1995).

Schwager appealed to the district court arguing, *inter alia*, that use of collateral estoppel was improper and that exemplary damages are dischargeable. The district court affirmed the bankruptcy court. On appeal, Schwager argues that the use of collateral estoppel is inappropriate, asserts that the court erred in determining that he was a fiduciary to the limited partners, and raises several other procedural arguments. We will discuss each in turn.

## II.  DISCUSSION

### A.  *Collateral Estoppel*

The Supreme Court has explicitly stated that collateral estoppel, or issue preclusion, principles apply in bankruptcy dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). In such proceedings, "[p]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability, although the bankruptcy court retains jurisdiction to ultimately determine the dischargeability of the debt." *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996). The preclusive

_____

*re Garner*), 56 F.3d 677, 679 (5th Cir. 1995).

5

effect given to state court judgments under collateral estoppel is a function of the full faith and credit statute. *Garner v. Lehrer* (*In re Garner*), 56 F.3d 677, 679 (5th Cir. 1995)(citing 28 U.S.C. § 1738 ("[J]udicial proceedings of any court of any [State] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.")). A bankruptcy court's decision to give preclusive effect to a state court judgment is a question of law that this court reviews *de novo*. *Gober*, 100 F.3d at 1201; *Garner*, 56 F.3d at 679. Because Congress granted bankruptcy courts exclusive jurisdiction to determine whether a debt is dischargeable based on the bankruptcy courts' expertise, *Brown v. Felsen*, 442 U.S. 127, 135-36 (1979), "in only limited circumstances may bankruptcy courts defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues." *Dennis v. Dennis* (*In re Dennis*), 25 F.3d 274, 278 (5th Cir. 1994).

Because the 1989 judgment was entered by a Texas state court, Texas rules of preclusion apply. *See Garner*, 56 F.3d at 679 & n.2. "Under Texas law, collateral estoppel 'bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action.'" *Id.* at 679 (quoting *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816,

6

818 (Tex. 1984)); *accord Gober*, 100 F.3d at 1201. The elements

of collateral estoppel under Texas law are:

> (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984).

The bankruptcy court found, and the district court agreed, that collateral estoppel applied, based on the jury's findings in the 1989 judgment. The jury found several facts that pertain to this case. In response to Question No. 16, the jury found that "Schwager breach[ed] his fiduciary duty to [the limited partners] in the performance of his responsibilities, . . . which proximately caused damages [to the limited partners]." In response to Question No. 17, the jury determined that "Schwager materially breach[ed] the limited partnership agreement, . . . proximately causing damages to the [limited partners]." The jurors were instructed to answer Question No. 18 only if they answered "yes" to either Question No. 16 or Question No. 17. The jury then awarded damages pursuant to Question No. 18, which is as follows:

> What sum of money . . . would fairly and reasonably compensate [the limited partners] for damages sustained, if any, as a result of breach of fiduciary duty *or* the material breach of the partnership agreement (which you previously found)?

(emphasis added). The jury also answered "yes" to Question No. 19, which is as follows:

Was Bruce Schwager's breach of fiduciary duty, if any, committed intentionally, maliciously or with heedless and reckless disregard of the rights of any of the limited partners?[4]

After barring relitigation of these issues under the doctrine of collateral estoppel, the bankruptcy court concluded that Schwager's debt based on the 1989 judgment was nondischargeable under § 523(a)(4).[5] Section 523(a)(4) provides that a chapter 7 bankruptcy does not discharge any debt "for . . . defalcation while acting in a fiduciary capacity," with defalcation being defined as "a willful neglect of duty, even if not accompanied by fraud or embezzlement." *LSP Inv. Partnership*

---

[4] This question also provided the following instructions:

"Maliciously" means (a) conduct that is specifically intended to cause substantial injury or damage; or (b) an act that is carried out with flagrant disregard for the rights of others and with actual awareness on the part of Bruce Schwager that the act will, in reasonable probability, result in damages.

"Heedless and reckless disregard" means more than momentary thoughtlessness, inadvertence or error of judgment. It means such an entire want of care as to indicate that the act or omission in question was a result of concious [sic] indifference to the rights or welfare of the persons affected by it.

[5] The bankruptcy court determined that jury's finding of fraudulent inducement satisfied the elements of nondischargeability under § 523(a)(2)(A), but did not find the debt nondischargeable under that section because the jury did not award any damages for any fraudulent conduct. The bankruptcy court made no determination regarding nondischargeability under § 523(a)(6). Schwager complains that the bankruptcy court incorrectly determined that he had engaged in willful and malicious conduct under § 523(a)(6). However, this argument is without merit because the bankruptcy court did not rule against Schwager on this basis.

8

*v. Bennett* (*In re Bennett*), 989 F.2d 779, 790 (5th Cir. 1993).[6]
Thus, the jury must have found a breach of fiduciary duty and awarded damages on that basis in order for collateral estoppel to establish defalcation in a fiduciary capacity under § 523(a)(4).[7]

Schwager asserts that the bankruptcy court's conclusion is erroneous, *inter alia*, because collateral estoppel does not apply in this circumstance.[8]  He argues that the jury findings

---

[6]  The substance of the defalcation requirement is discussed in Part II.B *infra*.

[7]  None of the parties argue that the jury's other finding on breach of the partnership agreement alone would be sufficient to make the debt nondischargeable under § 523(a)(4).

[8]  Schwager also argues that if any judgment is to be given preclusive effect, it should not be the 1989 judgment but the prior one appointing a receiver.  This argument is without merit. Under Texas law, an order appointing a receiver is interlocutory. *See* TEX. CIV. PRAC. & REM. P. CODE ANN. § 51.014(1) (Vernon 1997); *Schwager*, 827 S.W.2d at 506-07.  An interlocutory order is not entitled to preclusive effect under Texas law. *Gober*, 100 F.3d at 1201.

Schwager further contends that the jury's findings cannot be the basis of collateral estoppel because they are based on a preponderance of the evidence standard and the proper standard is clear and convincing evidence.  Because we conclude that collateral estoppel cannot be applied in this case, the standard used for the jury findings is irrelevant.  However, to the extent Schwager argues that the standard in bankruptcy dischargeability proceedings is clear and convincing evidence, this argument is without merit.  *See Grogan*, 498 U.S. at 659 (holding that the preponderance of the evidence, not the clear and convincing evidence, standard applies in bankruptcy dischargeability proceedings).

Schwager makes several arguments regarding the propriety of using the 1989 judgment as a basis of collateral estoppel.  He argues that he raised issues regarding the jurisdictional nullity of the 1989 judgment based on the finality of the previous judgment appointing a receiver and complains that the bankruptcy court did not hold an evidentiary hearing.  Schwager also basically argues that because the state appellate court dismissed almost all of his points of error, the affirmance of the 1989

9

incorporated into the 1989 judgment cannot support the application of the collateral estoppel doctrine because the jury found both breach of the partnership agreement and breach of fiduciary duty.  Schwager maintains that the conjunctive nature of the jury's damages finding means "it was impossible to determine what was the basis for the issuance of the debt against Schwager."  We agree with Schwager.

Texas courts have adopted the Restatement (Second) of Judgments § 27, which is the general rule on issue preclusion.[9] *Gober*, 100 F.3d at 1203 n.6 (noting that "Texas courts follow Restatement (Second) of Judgments § 27 in determining when to allow issue preclusion" and citing cases).  In *Eagle Properties, Inc. v. Scharbauer*, 807 S.W.2d 714, 722 (Tex. 1991), the Texas Supreme Court applied comment i to the Restatement, which states:

> *i.  Alternative determinations by court of first instance.*  If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone.

The Texas Supreme Court explained the justification for the rule:

---

judgment should be given no weight for collateral estoppel purposes.  These issues are irrelevant given our holding that the 1989 judgment cannot be the basis for collateral estoppel in this case.

[9]  Section 27 states:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

> The rationale for this rule is that a determination in the alternative may not have been as rigorously considered as it would have been if necessary to the result, and the losing party may be dissuaded from appealing one determination because of the likelihood that the other will be upheld.

807 S.W.2d at 722.

The limited partners argue, and the bankruptcy and district courts determined, that because the full amount of the jury's award can be upheld on either basis, collateral estoppel applies to both. This argument is without merit because this case falls directly under the rule of comment i. The limited partners seek to use one issue in the judgment, the breach of fiduciary duty, standing alone. However, the jury was asked in a single question to award damages for *either* breach of fiduciary duty *or* breach of the partnership agreement. Therefore, neither ground was essential to the judgment awarding these damages to the limited partners because the award can be upheld on either basis.

Comment o provides an exception to the rule in comment i:

> If the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient and accordingly affirms the judgment, the judgment is conclusive as to both determinations. In contrast to the case discussed in Comment *i*, the losing party has here obtained an appellate decision on the issue, and thus the balance weighs in favor of preclusion.

Although Texas has not specifically addressed comment o, federal circuit cases interpreting comment o clearly indicate that the appellate court must have considered the *specific* issue before it is barred by collateral estoppel. *See Arab African Int'l Bank v.*

11

*Epstein*, 958 F.2d 532, 537 (3d Cir. 1992) (concluding, in a legal malpractice action, that collateral estoppel based on a previous state court judgment did not apply because the state appellate court did not specifically address the reliance element of the legal malpractice claims); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1168 (5th Cir. Unit A. Dec. 7, 1981) (noting the "general rule" adopted in comment o that "if a judgment is appealed, collateral estoppel only works as to those issues specifically passed upon by the appellate court"). In the appeal of the 1989 judgment, the court gave Schwager three opportunities to brief the appeal properly before eventually striking forty-two of his forty-four points of error. *See Schwager v. Texas Commerce Bank, N.A.*, 827 S.W.2d at 506. Thus, the appellate court ultimately considered only two issues: the trial court's jurisdiction and whether the trial court erroneously denied Schwager the right to open and close the evidence. *Id.* at 507. The court did not pass specifically on the issues of breach of fiduciary duty or breach of the partnership agreement, and thus, the review provided by the Texas appellate court does not take this case out of the general rule of comment i and into the exception of comment o.

Therefore, the application of collateral estoppel in this case was erroneous. We reverse and remand for a redetermination of the dischargeability issues, with specific, independent factual findings. The law governing some of these potential

12

factual findings in the § 523(a)(4) context will be discussed below.[10]

## B. Defalcation

The bankruptcy court, relying on collateral estoppel, determined that the jury's finding that Schwager's breach of fiduciary duty was "committed intentionally, maliciously or with heedless and reckless disregard of the rights of the limited partners" meets the "defalcation" element of § 523(a)(4).  This, in combination with the court's conclusion that Schwager was a fiduciary to the limited partners and the jury finding that Schwager breached his fiduciary duty, led the bankruptcy court to conclude that the compensatory damages are nondischargeable under § 523(a)(4).  The bankruptcy court next considered the issue of whether the punitive damages are also nondischargeable.  While the Fifth Circuit has not addressed the dischargeability of punitive damages under § 523(a)(4), the bankruptcy court relied on other Fifth Circuit precedent as well as precedent from other circuits in concluding that the punitive damages are nondischargeable because the underlying compensatory damages are also nondischargeable.  Because we have concluded that it was error to apply collateral estoppel and rely on these jury findings, whether the exact language of the jury's findings meets the elements of § 523(a)(4) defalcation no longer matters.  The

---

[10]  We do not address the § 523(a)(2) and § 523(a)(6) nondischargeability provisions because they were not briefed in this appeal.  However, because the limited partners raised these grounds in their dischargeability pleading, the parties and the court are free to consider them on remand.

13

bankruptcy court, on remand, will make independent findings to determine if the facts of Schwager's debt meet § 523(a)(4).

Schwager argues that even if the compensatory damages are nondischargeable, the punitive damages may be dischargeable.[11] While a discussion of the punitive damages issue is premature because it is still unclear in this case whether the compensatory element of Schwager's debt qualifies under § 523(a)(4), a discussion of the types of findings necessary to make this determination of compensatory damages is in order.

A line of Fifth Circuit cases, beginning with *Moreno v. Ashworth* (*In re Moreno*), 892 F.2d 417, 422 (5th Cir. 1990), have defined defalcation as "a willful neglect of duty, even if not accompanied by fraud or embezzlement." *Accord Sheerin v. Davis* (*In re Davis*), 3 F.3d 113, 115 (5th Cir. 1993); *Bennett*, 989 F.2d at 790. *Moreno* involved the dischargeability of the debt of a corporate president who was found to have improperly taken cash advances from the company. *Id.* at 418. *Davis* concerned a majority shareholder in a corporation who had, *inter alia*, improperly received informal dividends to the exclusion of Sheerin, the minority shareholder. 3 F.3d at 114. *Bennett* involved the general partner of a limited partnership who wrongfully charged the limited partners for expenses that should have been charged to the partnership. 989 F.2d at 782. The court in *Bennett* quoted the definition of defalcation and then

---

[11] The parties do not argue that if the compensatory damages are dischargeable, then the punitive damages are nondischargeable on some other theory.

14

stated: "Therefore, any debts incurred by Bennett as a result of the willful neglect of his [fiduciary] duties as the managing partner of the [limited partnership] are not dischargeable [under § 523(a)(4)]." *Id.* at 790. These cases have all involved financial misconduct by fiduciaries and have all consistently applied the Fifth Circuit rule that defalcation is a willful neglect of fiduciary duty.

A major issue among the circuits and commentators is what type of intent or mental state is necessary to qualify as defalcation. In the first major discussion of the issue, Judge Learned Hand noted the lack of a definition of defalcation in the Bankruptcy Code or its legislative history and then stated: "Colloquially perhaps the word 'defalcation,' ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts." *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2d Cir. 1937). As an initial matter, it is clear that defalcation requires a lesser standard than fraud, and thus defalcation does not require actual intent, as does fraud. *See id.* at 512 ("[W]hen a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a 'defalcation' though it may not be a 'fraud,' or an 'embezzlement,' or perhaps not even a 'misappropriation.'"); 4 COLLIER ON BANKRUPTCY § 523.10[1][b] (Lawrence P. King ed., 15th rev. ed. 1997 ("Defalcation . . . applies to conduct that does not necessarily reach the level of

fraud, embezzlement or misappropriation."); 2 DAVID G. EPSTEIN ET

AL., BANKRUPTCY § 7-28 at 368 (1992) ("Note that defalcation and

fraud are not the same thing.  Fraud requires some intent;

defalcation requires none.").  While defalcation may not require

actual intent, it does require some level of mental culpability.

It is clear in the Fifth Circuit that a "willful neglect" of

fiduciary duty constitutes a defalcation -- essentially a

recklessness standard.[12]

## C. *Fiduciary Duty*

---

[12]   The Fifth Circuit has not defined "willful neglect" in
the bankruptcy context, but it appears clear from usage in other
contexts that it is essentially a recklessness standard.  *See,
e.g.*, *United States v. Boyle*, 469 U.S. 241, 245 (1985) (defining
"willful neglect" in the statute regarding the penalty for late
filing of estate tax returns as "a conscious, intentional failure
or reckless indifference"); *Smith v. Wade*, 461 U.S. 30, 39 n.8
(1983) (defining "willful neglect" in the tort context as "that
degree of neglect arising where there is a reckless indifference
to the safety of human life, or an intentional failure to perform
a manifest duty to the public, in the performance of which the
public and the party injured has an interest" (internal quotation
omitted)).

     The Fifth Circuit averted to a negligence standard in *Carey
Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980).  In *Carey*, the
court held that there is no requirement of intentional conduct
for nondischargeability under then § 17(a), now § 523(a)(4), of
the Bankruptcy Code.  *Id.* at 375-76.  The debtor had argued that
intent was required, relying on language in the Second Circuit
case of *In re Bernard*, 87 F.2d 705, 707 (2d Cir. 1937), that
conduct under § 17(a) "must be due to a known breach of the duty,
and not to mere negligence or mistake."  The *Carey* court
concluded that *Bernard* did not apply to the facts of the case
before it, but also noted that "there is doubt as to the
continued validity of the dicta in *In re Bernard*."  615 F.2d at
376.  We do not read *Carey* as deciding that negligence suffices
to meet the defalcation rule of § 523(a)(4).  The discussion of
negligence in *Carey* is dicta in that its holding is clearly and
simply that intent is not required.  *Id.*  The court in *Carey* did
not resolve what level of culpability is required, but merely
held that intentional conduct is not always required.

16

The bankruptcy court granted summary judgment on the basis that Schwager's debt arose from defalcation in a fiduciary capacity under § 523(a)(4). Relying on *LSP Inv. Partnership v. Bennett (In re Bennett)*, 989 F.2d 779 (5th Cir. 1993), the bankruptcy court held that, as a matter of law, Schwager was in a fiduciary capacity with respect to the limited partners because he was the general partner of a limited partnership. The district court agreed with this determination.[13] Schwager argues that a fact issue exists as to whether he exercised sufficient control over the affairs of the partnership to fall under the rule of *Bennett* because the state court had appointed a receiver. We find Schwager's argument to be without merit.

"The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.* at 784. The Fifth Circuit has held that the concept of a fiduciary under § 523(a)(4) is narrowly defined, applying only to "technical or express trusts." *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980).

Despite this narrow definition, Schwager's duties to the limited partners as general partner fall squarely within this definition. In *Bennett*, the court concluded that "relationships

---

[13] The district court also affirmed on the basis of collateral estoppel, reasoning that the state court jury specifically found that Schwager had breached a fiduciary duty to the limited partners. We have already concluded that the bankruptcy and district court erred in applying collateral estoppel based on these jury findings.

17

in which trust-type obligations are imposed pursuant to statute or common law" qualify under this narrow standard.  989 F.2d at 785.  After an examination of Texas partnership law, the *Bennett* court concluded that "Texas law clearly and expressly imposes trust obligations on managing partners of limited partnerships and these obligations are sufficient to meet the narrow requirements of section 523(a)(4)."  *Id.* at 787.

Schwager argues that the state court's appointment of a receiver took control of the partnership away from him.  He suggests that because the general partner's ability to control the partnership was critical to *Bennett*'s rationale, *see id.* at 789, the rule in *Bennett* does not establish as a matter of law that he had a fiduciary relationship with the limited partners.  However, the receiver was only appointed to sell the property and did not have control over the operations of the partnership.  In fact, the state court judgment appointing a receiver specifically provided that Schwager was to continue to operate the restaurant.  The order further directed the limited partners to continue with their obligation to pay partnership costs and for Schwager to account for the money in his management of the partnership property.  Thus, the mere fact that a receiver was appointed does not indicate that Schwager did not control the partnership.  We conclude that the bankruptcy and district court did not err in determining, as a matter of law, that Schwager was in a fiduciary relationship with the limited partners under the rule in *Bennett*.

**D.  *Other Issues***

Schwager complains that the bankruptcy court erred when it permitted the limited partners to file an amended complaint after the expiration of the 60-day filing period set forth in Bankruptcy Rule 4007(c) for filing a complaint to determine dischargeability. The limited partners filed their nondischargeability complaint in the bankruptcy court three days before the filing deadline, and the bankruptcy court allowed them to file an amended complaint approximately two weeks later. Bankruptcy Rule 7015 adopts Rule 15 of the Federal Rules of Civil Procedure governing amendment of complaints, which provides that "leave shall be freely given when justice so requires." The amended complaint did not allege new grounds for finding the 1989 judgment debt nondischargeable, but merely added specific facts consistent with the nondischargeability grounds advanced in their original complaint. The bankruptcy court did not abuse its discretion in allowing this amendment.

Schwager argues that the limited partners failed to raise defalcation as a ground for nondischargeability because they did not use the word "defalcation" in either their complaint or the amended complaint.[14] The district court held that the limited partners raised the issue of defalcation by citing § 523(a)(4) as a ground for nondischargeability. On claims of error based on allegations of surprise and failure to plead, the standard of

---

[14] The limited partners pleaded that Schwager's actions litigated in the case leading to the 1989 judgment "constitute[d] an exception under 11 U.S.C. Section 523(a)(4) to the dischargeability of indebtedness owed by [Schwager] ... because of [Schwager's] fraud while acting in a fiduciary capacity."

19

review is abuse of discretion. *Zielinski v. Hill* (*In re Hill*), 972 F.2d 116, 122 (5th Cir. 1992); *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 176-77 (5th Cir. 1992). There is no reversible error if the complaining party had ample notice of the issue. *Hill*, 972 F.2d at 122. Schwager had ample notice of a defalcation claim because the limited partners pleaded § 523(a)(4) as a basis of nondischargeability. The bankruptcy court did not abuse its discretion in reading the limited partners' pleading as raising defalcation. Furthermore, Schwager never asserts that he had evidence he did not present or that he would have proceeded differently in any way had the word "defalcation" been in the pleading. Any error, therefore, was harmless. Finally, even if Schwager had evidence he did not present because of lack of notice of the defalcation issue, he will have an opportunity to present it on remand to the bankruptcy court.

Schwager makes much of the fact that bankruptcy nondischargeability rules should be interpreted in favor of debtors and that *pro se* litigants should be given liberal treatment by the courts. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)(noting that pro se allegations are held to less strict standards than those of lawyers); *Boyce v. Greenway* (*In re Greenway*), 71 F.3d 1177, 1180 n.8 (5th Cir.) ("[W]e are bound to construe the exceptions contained in § 523 of the Bankruptcy Code narrowly and in favor of the debtor."), *cert. denied*, 116 S. Ct. 2499 (1996). While both of these statements are true, Schwager

20

has not explained how the bankruptcy or district court violated either of these principles. He has neither identified any ambiguous statute or rule that was interpreted in favor of the limited partners nor claimed that any issue he arguably raised was not adequately considered by the courts. We find no error in the application of either of these two principles.

Schwager argues that *res judicata*, or claim preclusion, bars the limited partners' nondischargeability claim because they did not raise the issue of defalcation while acting in a fiduciary capacity before the state trial court. The doctrine of *res judicata* does not apply in bankruptcy nondischargeability proceedings. *Fielder v. King* (*In re King*), 103 F.3d 17, 19 (5th Cir.) (citing *Brown v. Felsen*, 442 U.S. 127 (1979)), *cert. denied*, 117 S. Ct. 2454 (1997).

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment affirming the bankruptcy court's judgment and REMAND to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion. Costs shall be borne by the appellees.