**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 00-20646**
_____

**In the Matter of:    DAVID J. FELT,**

**Debtor.**

-----------------------------------------------------

**THE OFFICE OF THRIFT SUPERVISION,**

**Appellee,**

**VERSUS**

**DAVID J. FELT,**

**Appellant.**

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

June 21, 2001

Before JOLLY, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

**I.**

The Office of Thrift Supervision ("OTS")[1] brought this action
as an adversary proceeding in 1993 against Debtor David J. Felt
("Felt") in the Bankruptcy Court for the Southern District of

---

[1]OTS, an office within the Department of the Treasury, is the
federal agency with primary responsibility for regulating savings
associations, or "thrifts."

Texas.  OTS sought a declaration that a debt reflected in a prior district court judgment was non-dischargeable in bankruptcy as provided by 11 U.S.C. § 523.[2]  In March 1997, the district court entered a final judgment declaring a portion of the debt non-dischargeable, and on appeal, a panel of this Court reversed in part and remanded.  See OTS v. Felt, No. 97-20418 (5th Cir. Mar. 1, 1999) (unpublished) (remanding to the district court for consideration of any additional evidence Felt was denied the opportunity to present when the district court granted OTS summary judgment *sua sponte* and without giving ten days notice).  Following remand, the district court again entered a final judgment in favor of OTS, declaring a portion of the debt non-dischargeable.  Finding no reversible error, we affirm.

## II.  BACKGROUND

*A.  The Reliance Judgment at Issue:*

The following is an abbreviated summary of the facts which gave rise to the entry of the 1991 judgment, the dischargeability *vel non* of which, is the subject of this appeal.

In December 1983, Felt purchased all of the issued and outstanding stock of Bowie County Savings and Loan Association ("Bowie"), in New Boston, Texas.  Bowie was a state-chartered, federally insured thrift regulated by the Federal Home Loan Bank

---

[2]The debt at issue is a final judgment ("the Reliance Judgment") for $4,271,120 plus interest and costs, entered against Felt in favor of OTS.

Board ("FHLBB"), the federal agency which preceded OTS as the federal thrift regulator. Felt borrowed nearly $1.5 million for the purchase of Bowie, part from Texas Investment Bank and the remainder from American Guaranty, Inc. ("AGI"), which was Felt's wholly-owned corporation.

Almost immediately after acquiring Bowie, Felt became the president, CEO, Chairman of the Board, a director, and sole stockholder of the institution. Felt also moved the thrift's home office to Houston and changed its name to Reliance. Based upon Felt's self-dealing and harm to Reliance through the indirect sale of two loans by AGI (Felt's company), to a subsidiary of Reliance, the FHLBB's enforcement office sought Felt's consent to entry of an order removing him as a Reliance director and officer and prohibiting him from further involvement in the thrift's affairs. The FHLBB also sought a consent cease and desist order against Reliance itself based on regulatory violations.

Though Felt claims he did it just to avoid spending millions defending against the FHLBB, he consented to sell his 100% interest in Reliance, and Reliance itself consented to a cease and desist order. These agreements were memorialized in a Letter of Agreement Felt executed on August 29, 1986, and a related Memorandum of Clarification. Felt specifically agreed to either sell his Reliance stock within six months, subject to FHLBB approval of the transaction and offering materials, or to transfer his shares to a trustee. The FHLLB agreed to keep the terms of the agreement

3

confidential, but Felt was not required to do so.

In the meantime, both Reliance and AGI were becoming financially distressed. Reliance's audited financial statements from 1986 showed a net worth of only $96,936, far below regulatory requirements. Similarly, AGI was insolvent by $614,824 as of October 1986. Felt personally owed AGI over $2.1 million.

In September 1986, as president of AGI, Felt wrote to several hundred AGI noteholders describing AGI's financial health as poor. Without disclosing his own personal debt to AGI, the letter implied that AGI could not repay the investors' notes. But Felt offered these noteholders an opportunity to "exchange" their notes for Reliance stock. Specifically, Felt's letter stated:

> [t]o try to solve AGI's problems by reducing its debt I will be preparing an offering circular for my stock in Reliance Savings Association for review by the Federal Home Loan Bank Board. Once the review is completed, I plan to offer you the option of exchanging your AGI note for Reliance Savings stock.

Felt included with the letter a 72-page "preliminary offering circular," which portrayed Reliance's condition as healthy. That circular relied upon Reliance's unaudited financial statements and announced that as of June 1986, Reliance stakeholder equity exceeded $1.3 million. The circular also noted that the "exchange"

4

sale of stock would qualify for "push-down" accounting treatment, so that stockholder's equity in Reliance would rise to $4.5 million.[3]

Felt admitted that he acted as the coordinator for the offering circular and that he reviewed the preliminary circular before causing it to be sent out. However, that circular failed to disclose the following: 1) that Reliance was subject to a cease and desist order; 2) that federal regulators were requiring Felt to dispose of all of his stock and disassociate himself from Reliance; and 3) that Specialty Finance Company, another Felt-owned entity, would finance approximately 33% of the Reliance stock purchases on favorable terms. Felt's attorney advised him to make the fullest disclosure possible in the circular and to obtain FHLBB approval of the offering circular "as a hedge against claims of failure to disclose material information or the making of misleading statements," but his lawyer never knew about the Letter of Agreement and Memorandum of Clarification requiring Felt to sell and disassociate from Reliance. Felt claims that he didn't disclose these matters because of the confidentiality clause.

---

[3]Push-down accounting permits an acquired thrift to push down the value that is paid for the stock to the balance sheet, to the net worth section. Even though the thrift itself does not receive the money, the value the new owners pay for the stock establishes a new basis for the thrift's assets, liabilities, and equity. The books show the excess of the purchase price over fair market value as the intangible asset "goodwill."

On September 23, 1986, Felt's attorney sent a Form OC (Offering Circular) for the sale of Reliance stock to the FHLLB for its review and approval. FHLLB's legal staff responded to Felt's attorney that the circular was materially deficient and that it could not even be reviewed without audited 1986 financial statements with the auditors' opinions. Felt's lawyer informed Felt of the FHLBB's response. Felt contacted Reliance's outside auditors (the firm of Peat, Marwick et al.) and requested an opinion for the offering documents. The auditors, however, refused "to be associated with the circular at all." Peat Marwick had been auditing Reliance's June 1986 consolidated financial statements and issued a report explaining that it could not opine that the statements were in accord with generally accepted accounting principles because it had not been provided adequate information from Reliance.

Felt continued with efforts to and did produce a final offering circular, and that circular was never submitted to the FHLBB for approval. On December 22, 1986, Felt mailed the unapproved final offering circular to potential investors. The final circular contained a disclosure statement to highlight changes from the preliminary circular, and it informed potential investors that Felt had now determined that the offering "is not required to be approved by the FHLBB." Felt informed the investors that audited financial reports had been prepared but were not

6

included.  Felt also stated in his circular that push-down accounting was appropriate and that Reliance would have a positive capital balance of $4.5 million after the sale.

On December 31, 1986, Felt sold all 450,000 shares of his Reliance stock at $10 per share.  Approximately 150 AGI investors exchanged their notes for about 60% of the Reliance stock.  A second group of five investors paid cash, and the remaining eight investors purchased roughly 33% of the remaining stock for no money down with financing from Felt's Specialty Finance Company, which held the stock as collateral for the loans.

As promised, Reliance's initial financial statements after the sale reflected a net worth of $4.5 million using push-down accounting to account for the sale of the stock.  Peat Marwick later determined that push-down accounting was not appropriate in this case under generally accepted accounting principles because more than 10% of the stock was financed by Specialty Finance, the seller's entity, and thus was not at "arm's length".  FHLBB analysts also concluded that the transaction was not at arm's length because (1) the noteholders already had a business relationship with Felt and it appeared they were "coerced" into swapping debt for stock, and (2) AGI was an affiliate of the seller.  Felt conceded in his deposition that he "probably" knew that 90% and that he "definitely" knew that a high percentage of his Reliance stock had to be sold at arm's length to qualify for push-down accounting.  The FHLBB ordered Reliance to reverse the

7

push-down accounting entries; thus, Reliance showed a <u>negative</u> net worth of $5.6 million.  Suffice it to say, Reliance was never able to recover from such a huge insolvency, and in 1988, the FHLBB placed the thrift into receivership.

In April 1988, the FHLBB enforcement office commenced a recision action against Felt, seeking an injunction and an order requiring Felt to rescind the 1986 sale of Reliance stock, and alleging that Felt failed to obtain FHLBB approval of the sale in violation of 12 C.F.R. § 563g.2 and that he used an offering circular containing material misstatements and omissions in violation of 12 C.F.R. § 563g.10.  On July 24, 1989, the district court, Judge Lynn Hughes presiding, found Felt liable because he failed to obtain FHLBB approval for the offering circulars as required by FHLBB regulations.  After a hearing on damages, the district court ruled that when he sold the Reliance stock, Felt knew that Reliance would not be eligible to use push-down accounting and that the stock would be worthless immediately after the sale.  On January 9, 1991, the district court entered the Reliance Judgment awarding damages in the amount of roughly $4.2 million to OTS "in trust for individuals . . . who purchased reliance Savings Association stock from David J. Felt during December, 1986."  Felt appealed, and a prior panel of this Court summarily affirmed.

*B. Post-Reliance Judgment Facts:*

On September 1, 1992, while OTS was still trying to collect on the Reliance Judgment, Felt filed for bankruptcy under Chapter 11; the case was later converted to a Chapter 7 case. On June 25, 1993, OTS filed a claim against Felt's bankruptcy estate for roughly $6.4 million (the Reliance Judgment plus costs and interest). In July, OTS filed a complaint for determination of non-dischargeability in the bankruptcy court, thus commencing this case as an adversary proceeding under 11 U.S.C. § 523(c)(1). OTS sought a declaration that the Reliance judgment is not dischargeable under several subsections of 523, including (a)(4), which bars the discharge of a debt resulting from "defalcation while acting in a fiduciary capacity." The parties filed dispositive cross motions on the discharge issue. In November 1994, the district court withdrew the reference from the bankruptcy court and assigned the case to Judge Lee Rosenthal, who on September 25, 1995, issued an order disposing of various motions including a motion brought by Felt for a determination that he was not a fiduciary under §§ 523(a)(4) and (e), or the common law. The district court ruled that Felt was a fiduciary under § 523(a)(4),

9

the plain language of § 523(e),[4] and the common law, and asked that OTS submit a proposed final judgment or identify unresolved issues.

OTS submitted the following unresolved issues: (1) whether OTS had standing to pursue the non-dischargeability action; and (2) whether Felt's breaches of fiduciary duty reflected a "willful" neglect of duty as would be required for a finding of defalcation under § 523(a)(4).

The district court, without further briefing, granted OTS's cross-motion for partial summary judgment, dismissing Felt's affirmative defense that OTS lacked standing. The court ruled *sua sponte* that Felt's acts were "willful" as a matter of law, and the district court entered a final judgment on March 31, 1997. Felt appealed, and a prior panel of this Court "reversed in part, vacated in part, and remanded in part" as to the district court's *sua sponte* grant of summary judgment on the question of willfulness. See OTS v. Felt, No. 97-20418 (5th Cir. Mar. 1, 1999) (unpublished). On remand, OTS moved for summary judgment on the issue of willfulness, and after full briefing, the district court granted OTS's motion on June 29, 2000. From the final judgment entered thereupon, Felt timely appeals.

---

[4]According to § 523(e), "[a]ny institution-affiliated party of a depository institution or insured credit union shall be considered to be acting in a fiduciary capacity with respect to the purposes of subsection (a)(4) or (11).

10

## III.  DISCUSSION

A.  *Whether Felt can relitigate whether he was a fiduciary, whether he breached his fiduciary duties, and whether OTS has standing to contest the dischargeability of a debt on behalf of investors?*

As a preliminary matter, OTS argues that certain issues in this case have been resolved by the prior panel, and that disposition is the law of the case.  Specifically, OTS argues that our prior panel necessarily had to have decided that Felt had a fiduciary duty and breached the same to make relevant the determination of willfulness.  Had no such finding been implicitly made by the prior panel, argues OTS, the issue of willfulness would have been irrelevant and there would have been no reason to remand.  As OTS argues, the prior panel first accepted and affirmed, albeit implicitly, the district court's rulings that Felt was a fiduciary and that he breached his fiduciary duties.

It is clear from a reading of the prior panel's opinion that the only issue explicitly addressed was the district court's *sua sponte* grant of summary judgment on the issue of Felt's willfulness.  The partial remand by the prior panel also was explicitly linked to consideration of any additional evidence that Felt produced "on the issue of willfulness."  Implicit in the prior panel's consideration on the issue of willfulness are the prerequisite findings that Felt had and breached a fiduciary duty to Reliance and the AGI investors.  However, Felt argues that the only "holding" of the prior panel is with respect to the procedural

11

defect in the district court's grant of summary judgment *sua sponte* on the issue of willfulness.

We find adequate support for OTS's argument in our own precedent. The law of the case doctrine applies not only to issues decided explicitly, but also to everything decided "by necessary implication." See Browning v. Navarro, 887 F.2d 553, 556 (5th Cir. 1989). And, though not expressly addressed in an initial appeal, those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case. In Knotts v. United States, 893 F.2d 758 (5th Cir. 1990), a personal injury claim under the Federal Tort Claims Act, the government asserted immunity as a defense. The district court rejected immunity, found both the government and the plaintiff to be negligent, and apportioned 100% of the fault to the victim. On appeal, the government argued the district court's error in rejecting immunity. On appeal, this Court did not expressly address the immunity argument, but went on to vacate the judgment on other grounds, and it ordered reapportionment of fault. In a second appeal, the government tried again to raise its immunity defense, but we held that the immunity defense was foreclosed by our decision in the prior appeal. See id. at 761. In so doing, we stated that although not expressly addressed in the prior opinion,

12

the immunity defense was briefed and considered.  Id. Specifically, we stated "by remanding the case with instructions that the district court apportion fault . . . we indicated, albeit tacitly, our rejection of the United States' claim of immunity." Id.

Here, the issues of whether Felt was a fiduciary, whether Felt breached his fiduciary duty, and whether OTS had standing to bring the non-dischargeability action, were briefed, and are necessary prerequisites to the relevance of considering the issue of willfulness.  Consequently, we find persuasive the argument that the district court's findings on those issues were implicitly affirmed by the prior panel and are the law of the case.  Our review of Felt's brief to our prior panel convinces us that those issues were fully briefed to the prior panel and were, therefore, implicitly affirmed.  Consequently, we conclude that the law of the case doctrine precludes reconsideration of the issues of Felt's fiduciary status, his breach of his fiduciary duties, or OTS's standing to pursue this action.

B. *Whether the summary judgment evidence established as a matter of law that Felt willfully engaged in defalcation in breach of his fiduciary duties?*

Here, Felt challenges the merits of the district court's conclusion that, based upon the undisputed summary judgment evidence, Felt's breaches of his fiduciary duties were willful and, thus, constituted defalcation under § 523(a)(4).  We review a

13

district court's award of summary judgment *de novo*, applying the same standards applicable in the district court.  See <u>Sherrod v. American Airlines, Inc.</u>, 132 F.3d 1112, 1119 (5th Cir. 1998).  And we review the summary judgment evidence in the light most favorable to the non-moving party, in this case Felt.  See <u>Melton v. Teachers Ins. & Annuity Ass'n</u>, 114 F.3d 557, 559 (5th Cir. 1997).  Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is thus appropriate only if

> . . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The central issue in this case boils down to whether Felt's breaches constitute defalcation for purposes of § 523(a)(4), in which case, the debt at issue would be non-dischargeable in bankruptcy.  The defalcation determination turns on the issue of whether Felt's breaches were "willful."  See <u>Moreno v. Ashworth</u>, 892 F.2d 417, 421 (5th Cir. 1990) (stating that "defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement"); <u>see</u> <u>also</u> <u>Schwager v. Fallas</u>, 121 F.3d 177, 184, 185 (5th Cir. 1997).  This Court has described the "willful neglect" of fiduciary duty as "essentially a recklessness standard."  <u>Schwager</u>, 121 F.3d at 185.  Thus, willfulness is measured objectively by reference to what a reasonable person in the debtor's position knew

14

or reasonably should have known. See Roy v. Gravel, 143 B.R. 825, 828 (W.D. La. 1992), aff'd, 983 F.2d 1062 (5th Cir. 1993). The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive. Id. at 828.

*i.  Duty to Reliance*

First, with respect to Felt's fiduciary duty to Reliance, the district court concluded that Felt breached his duties to Reliance, not just in one, but in three ways, each of which independently supports a finding of defalcation: (1) he willfully failed to obtain FHLBB approval of his final offering circulars; (2) he willfully drafted and used circulars that contained material omissions; and (3) he willfully misrepresented that Reliance would be able to use push-down accounting to create a positive net worth after completion of the stock sale. For the reasons noted below and for substantially the same reasons stated by the district court, we find that there is no genuine dispute that the evidence establishes Felt's "willful" breach of the duty to Reliance.

FHLBB regulations explicitly require that offering circulars be approved by the FHLBB. See 12 C.F.R. § 563g.2. As noted above, as a fiduciary, Felt is presumed to know his legal obligations, but beyond this fact, here, Felt had actual knowledge of the approval requirement. The Letter of Agreement explicitly put Felt on notice that in addition to requiring that he divest his interest in the

Reliance stock, he was to obtain approval of any offering circular or supporting materials. His understanding of this fact is also evidenced by the undisputed fact that he submitted his preliminary circular to the FHLBB for approval. Despite his knowledge that he needed approval, Felt nonetheless caused the final offering circular to be mailed to potential investors without FHLBB approval.

FHLBB regulations also contain an explicit requirement that the offeror must make full and truthful disclosures in offering materials. See 12 C.F.R. § 563g.10. Felt's attorney testified that he expressly informed Felt of this duty, and Felt admitted as much when he stated that he reviewed the offering materials for "accuracy." Notwithstanding his understanding of this duty, Felt falsely wrote that the final offering did not require FHLBB approval. Additionally, the offering circulars failed to disclose that Felt was required by the Letter of Agreement to dispose of all of his Reliance stock, or that Reliance was subject to a cease and desist order.

Concomitant with the duty not to make material omissions is the duty not to make material misrepresentations in offering materials. See 12 C.F.R. § 563g.10. The evidence here reveals, through his own testimony, that Felt was aware that in order to qualify for push-down accounting, thus increasing Reliance's paper worth, more than 90% of the transactions would have to be "at arm's length." In this case, a substantial majority of the stock sale

16

was not at arm's length by virtue of the fact that more than 30% of the stock was financed by Specialty Finance and that Felt acted as the coordinator for the sales transaction while simultaneously controlling Reliance, AGI, and Specialty Finance. The record unambiguously establishes that, at the time he prepared and distributed the final offering materials, Felt objectively knew or should have known that the stock sale would not qualify for push-down accounting and, thus, the stock would instantly be worthless upon sale. This is probably the most egregious example of Felt's willful behavior which qualifies as defalcation within the meaning of § 523(a)(4).

*ii. Duty to AGI Investors*

Finally and simply put, with respect to Felt's duty to the AGI investors, the record establishes that in addition to the material misstatements and omissions made to the AGI noteholders (potential investors), Felt utterly failed to disclose the personal benefits he would obtain from the transaction. He also failed to disclose to the potential investors that he personally owed AGI $2.1 million ($1.9 million of which was due the day after the stock sale), which if paid off would have increased the solvency of AGI. Given the aforementioned actual and imputed knowledge of his duty to make full and truthful disclosures in his offering materials, these misstatements and omissions demonstrate at a very minimum the recklessness required for a finding of defalcation under

17

§ 523(a)(4).

## IV.  CONCLUSION

Having conducted a de novo review of this case and having considered the parties' respective briefing with the benefit of oral argument, we find no reversible error.  Accordingly, the judgment of the district court is affirmed for the reasons stated in the district court's memorandum and order.

**AFFIRMED.**