**METROPOLITAN PROPERTY AND LIABILITY INSURANCE COMPANY of Warwick, Rhode Island, and Nathanael Pugh, Relators,**

v.

**Hon. Dennis Wayne BRIDEWELL, Judge, 249th District Court, Johnson County, Texas, Respondent.**

No. 10–96–220–CV.

Court of Appeals of Texas, Waco.

Nov. 20, 1996.

Paul E. Galvin & Kelly A. Rittenberry, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Dallas, for Relators.

John MacLean, MacLean & Boulware, Cleburne, Larry R. Veselka, Smyser, Kaplan & Veselka, L.L.P., Houston, for Real Parties In Interest.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Metropolitan Property and Casualty Insurance Company of Warwick, Rhode Island ("Metropolitan") and its agent, Nathanael Pugh ("Pugh") (collectively "Relators"), seek to compel Judge Wayne Bridewell ("Respondent") to stay the proceedings below and order the parties to arbitration under the Federal Arbitration Act ("FAA"). 9 U.S.C.A. §§ 1–16 (West 1970 & Supp.1996).

In 1987, Metropolitan and Roger Harmon ("Harmon"), the real party in interest, entered into an Agency Agreement whereby Harmon would sell and Metropolitan would underwrite automobile and homeowner insurance policies. Harmon is an independent insurance agent with many years experience.

The Agency Agreement contains the following provision:

**X. ARBITRATION** In the event of any dispute arising out of or under this agreement between the Agent and the Company, both agree to submit such dispute to arbitration, and the expense will be borne equally:

A. There will be three arbitrators: one will be selected by the Agent, one will be selected by the Company, and a third will be selected by those two arbitrators.

B. The determination of the arbitrators will be final and binding on all parties hereto.

In October 1995, Metropolitan notified Harmon that it was terminating the Agency Agreement effective April 17, 1996. Harmon filed suit against Relators on April 3, 1996, but did not have them served with process. Harmon's petition alleges three causes of action: (1) negligent misrepresentation; (2) tortious interference with prospective business relations; and (3) civil conspiracy. In a letter to Pugh dated April 17, 1996, Harmon's attorneys wrote:

We represent the Harmon Insurance Agency regarding disputes it has with Metropolitan regarding the above-referenced [Agency] Agreement.... [Y]ou purported to terminate the Agreement effective April 17, 1996, citing as a basis "the unfavorable property loss experience." The Harmon Insurance Agency disputes the claim that there has been an unfavorable property loss experience. The Agency has done everything requested by Metropolitan in this regard over the last several years and the experience has met all levels demanded by you. In addition, Metropolitan has not complied with the provisions of Texas Insurance Code art. 21.11–1.

The Agency hereby demands arbitration of these disputes pursuant to Section X of the Agreement and appoints Al Boenker as its arbitrator. Please, have your attorney or representative contact me....

By letter dated July 19, counsel for Relators "confirmed" and "acknowledged" Harmon's demand for arbitration and "confirm[ed] our agreement to arbitrate this dispute under the commercial arbitration rules promulgated by the American Arbitration Association." On July 25, Relators filed a "Motion to Transfer Venue and Motion to Dismiss, or, in the Alternative, Plea in Abatement, Motion to Stay and Compel Arbitration, or in the Alternative, Original Answer."

On September 25, Relators filed an "Amended Motion to Stay Litigation and Compel Arbitration" citing section X of the Agency Agreement. Relators argued that all of Harmon's claims "arise out of or under the Agency Agreement" and thus should be compelled to arbitration. Harmon responded that his April 17 letter demanding arbitration referred only to two disputes: termination of the Agency Agreement based on "unfavorable property loss experience" and failure to comply with the Insurance Code. Harmon argued that his letter did not refer to his causes of action for negligent misrepresentation, tortious interference, and conspiracy and that these causes of action did not arise "out of or under" the Agency Agreement. Respondent overruled Relators' motion and declined to compel arbitration.

■■■ Relators now seek a writ of mandamus to compel Respondent to stay the lawsuit and order all Harmon's claims to arbitration. A writ of mandamus may be issued to correct a "clear abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). Mandamus will not issue where there is a clear and adequate remedy at law, such as a normal appeal. *Id.* at 840 (citing *State v. Walker*, 679 S.W.2d 484, 485 (Tex.1984)).

## ARBITRATION

■■■ Federal and state law strongly favor arbitration. *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (orig.proceeding) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983)). A presumption exists in favor of agreements to arbitrate under the Federal Arbitration Act. *Id.* The party opposing an arbitration agreement bears the burden of defeating it. *Id.*

■ "Once a party seeking to compel arbitration establishes that an agreement exists under the FAA, and that the claims raised are within the agreement's scope, the trial court 'has no discretion but to compel arbitration and stay its proceedings pending arbitration.'" *Id.* (citing *Shearson Lehman Bros., Inc. v. Kilgore,* 871 S.W.2d 925, 928 (Tex.App.—Corpus Christi 1994, orig. proceeding)). A party who is erroneously denied the right to arbitrate under the FAA has no adequate remedy at law and mandamus relief is appropriate. *Id.* at 945.

■ Relators' motion alleged that the Agency Agreement was governed by the FAA because the subject of the contract involves interstate commerce. Attached to the motion is Pugh's affidavit stating that the Agreement "evidences a transaction involving commerce among the several States because the insurance policies made the subject of the Agency Agreement were issued to Texas residents by Metropolitan, a Rhode Island Corporation." Harmon did not controvert the affidavit; thus, the FAA applies to the agreement.[1] *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992) (orig.proceeding).

We next look to whether Harmon's claims are within the scope of the Agency Agreement. As we have noted, Harmon alleges in three causes of action that Relators: (1) negligently misrepresented their willingness to write insurance for his clients; (2) tortiously interfered with his prospective business relations with existing clients who would have otherwise continued to procure insurance through Harmon; and (3) conspired to violate section 21.11–1 of the Texas Insurance Code by applying economic coercion to terminate the Agency Agreement by mutual agreement rather than by Relators' unilateral action.

Harmon asserts that these causes of action are "separate and distinct" from the claims arising out of Relators' termination of the agreement. He says that Relators have "committed torts that will leave [his] clients without insurance" and that forcing his clients to change insurance carriers has caused and will cause his clients to place their insurance with his competitors. Relators argue that, but for the Agency Agreement, there would be no disputes between the parties.

■ Under the FAA, any doubts about whether the claims fall within the scope of the agreement must be resolved in favor of arbitration. *Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995) (orig.proceeding) (citing *Moses H. Cone Memorial Hosp.,* 460 U.S. at 24–25, 103 S.Ct. at 941–42). The policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration "unless is can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Id.* (citing *Neal v. Hardee's Food Sys., Inc.,* 918 F.2d 34, 37 (5th Cir.1990)). In determining whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint rather than the legal causes of action asserted. *Id.* at 900 (citing *Jack B. Anglin Co.,* 842 S.W.2d at 271). The burden was on Harmon to show that his claims fell outside the scope of section X of the agreement. *See id.* Harmon does not dispute that he has arbitrable claims—the termination based on "unfavorable property loss experience" and Relators' failure to comply with the Insurance Code. However, he argues that his claims of negligent misrepresentation, tortious interference, and conspiracy do not arise "out of and under" the agreement. Looking at the factual allegations in Harmon's petition, we cannot conclude with "positive assurance" that the claims alleged are not "factually intertwined" with the arbitrable claims. *Id.*

Thus, Relators have established that the Agency Agreement exists under the FAA

---

1. Relators' motion asserted in the alternative that the Texas General Arbitration Act applies. Tex. Civ.Prac. & Rem.Code Ann. §§ 171.001–.023 (Vernon Supp.1997). However, Pugh's uncontroverted affidavit established the applicability of the FAA. *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992) (orig.proceeding)

(although Anglin pleaded the Texas Act in the alternative, the FAA applied). We believe mandamus to be the proper remedy. *Id.* at 272 (remedy of mandamus appropriate when action under the FAA in state court although remedy of interlocutory appeal appropriate if brought under the Texas Act).

and that the claims raised are within the scope of that agreement. Respondent had no discretion but to compel arbitration and stay the proceedings pending arbitration. *Cantella,* 924 S.W.2d at 944–45.[2]

We conditionally grant the writ of mandamus and direct Respondent to order that all claims proceed to arbitration. Because we are confident that Respondent will comply with our decision, the writ will issue only if he fails to do so.

---

**2.** We are aware that the arbitration agreements in *Cantella, Jack B. Anglin Co.,* and *Prudential* may be more encompassing than the "out of and under [the] agreement" language found in section X of the Agency Agreement. However, given the strong policy favoring arbitration and the fact that there would be no dispute absent the agreement, we believe that the agreement covers all of Harmon's claims.