**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 00-20746**

---

**ALPHA/OMEGA INSURANCE SERVICES, INC.,**

**Plaintiff-Appellant,**

**VERSUS**

**THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,**

**Defendant-Appellee.**

---

Appeal from the United States District Court
For the Southern District of Texas

---

November 5, 2001

Before JONES, SMITH, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Plaintiff Alpha/Omega Insurance Services, Inc. appeals the trial court's granting of summary judgment in favor of defendant Prudential Insurance Company of America. For the reasons expressed below, we vacate the trial court's summary judgment and remand to that court for consideration of Alpha/Omega's conversion and tortious-interference claims.

## I. BACKGROUND

In July 1991, Prudential appointed Alpha/Omega as a "special agent," authorized to write and sell Prudential's property and casualty insurance.[1] On December 7, 1995, Prudential gave Alpha/Omega notice that it was terminating this agency relationship on December 31, 1995. Alpha/Omega immediately protested Prudential's failure to provide it six months' written notice of termination and continued renewal payments as mandated by the Texas Insurance Code. *See* TEX. INS. CODE ANN., art. 21.11-1 § 1(a)-(b). In a letter dated December 22, 1995, Prudential acknowledged its "unique relationship" with Alpha/Omega and agreed to comply with article 21.11-1. Accordingly, the termination date was extended to June 30, 1996, and Prudential continued paying Alpha/Omega renewal commissions through December 31, 1996.

In February 1996, Prudential began notifying Alpha/Omega's clients insured by Prudential about the nonrenewal and offering replacement polices with other carriers. Alpha/Omega complained to Prudential about this contact with its clients, and Prudential agreed to stop soliciting these clients.

On June 27, 1997, Alpha/Omega sued Prudential in Texas state court for fraud, misrepresentation, conversion, and tortious

---

[1] Alpha/Omega is an "independent insurance agent," which means that it is not owned or controlled by any insurer or group of insurers and its agency agreement does not prohibit the representation of other insurers.

interference with existing and prospective contractual relations. Prudential removed the case to federal court on diversity grounds. Central to Alpha/Omega's claims was the theory that Prudential stole its "book of business,"[2] thereby allowing it to contact and steal Alpha/Omega's customers.

On February 1, 1999, the trial court granted Prudential summary judgment on all claims. It concluded that Alpha/Omega had not introduced facts to support its fraud and misrepresentation claims, and that Prudential owned the book of business, thus rendering conversion and tortious interference impossible. Alpha/Omega filed a timely appeal from this final judgment to this Court. In an unpublished opinion, we affirmed the granting of summary judgment on Alpha/Omega's fraud and misrepresentation claims. However, we reversed the judgment on the conversion and tortious-interference claims because we concluded that "the question of ownership of the book of business is a contested factual issue."[3] Accordingly, we vacated that part of the summary

---

[2]  The term "book of business" refers to a copy of the policy containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance premiums, the property covered, and the terms of insurance.

[3]  We noted that the question of ownership turned on the terms of the parties' agreement governing their relationship. The relevant clause states: "All books, accounts . . . records . . . and all other items provided by [Prudential], and relating to or connected with the business of [Prudential] . . . shall be the property of [Prudential]."

Ultimately we concluded that "the contract provision [is] ambiguous, and inasmuch as Alpha/Omega . . . submitted evidence

3

judgment and remanded those claims to the trial court.

On January 28, 2000, Prudential filed a motion for panel rehearing, urging that "regardless of who owned the book of property and casualty insurance, the tortious interference and conversion claims fail as a matter of law." We denied the motion without comment.

On remand, Prudential filed a second motion for summary judgment, asserting, as it had in its motion for rehearing, that ownership of the book of business was irrelevant because "Alpha/Omega received all relief that the Texas Insurance Code authorizes it—a terminated insurance agency—to receive for claims that relate to the termination of the relationship with Prudential or that relate to the book of business."

On August 10, 2000, the trial court again granted Prudential summary judgment on Alpha/Omega's conversion and tortious-interference claims. The court acknowledged our opinion that a fact issue existed about ownership of the book of business. But the court agreed with Prudential's assertion that this ownership issue was immaterial. Alpha/Omega timely appealed the trial court's granting of this second summary judgment to this Court.

## II. THE PARTIES' CONTENTIONS

that the disputed contractual provision did not convey the book of business to Prudential, a fact issue sufficient to survive summary judgment exists."

4

Alpha/Omega argues that, because this Court already reversed the trial court's first granting of summary judgment on Alpha/Omega's conversion and tortious interference claims, the trial court was barred by the "law of the case" doctrine from revisiting these issues in its second summary judgment order. In the alternative, Alpha/Omega argues that the trial court erred by concluding that the Texas Insurance Code's termination provisions preempt its common-law conversion and tortious interference claims. Finally, Alpha/Omega argues that summary judgment was improper because Prudential failed to conclusively establish the elements of its affirmative defenses of privilege and justification.

Prudential, on the other hand, argues that the law of the case doctrine does not apply here because no prior ruling exists on the issues the trial court decided in the second summary judgment. Moreover, Prudential contends that summary judgment was proper because it conclusively negated elements of Alpha/Omega's conversion and tortious-interference claims. And, finally, Prudential contends that it conclusively established all the elements of its affirmative defenses.

### III. THE LAW OF THE CASE DOCTRINE

"The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the

5

appellate court itself on a subsequent appeal." ***Todd Shipyards Corp. v. Auto Transp.***, 763 F.2d 745, 750 (5th Cir. 1985). As we have noted, it is premised "on the salutary and sound public policy that litigation should come to an end." ***Terrell v. Household Goods Carriers' Bureau***, 494 F.2d 16, 19 (5th Cir. 1974) (quoting ***White v. Murtha***, 377 F.2d 428, 431 (5th Cir. 1967)).

The doctrine's reach does have its limits. For example, unlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not. ***Morrow v. Dillard***, 580 F.2d 1284, 1290 (5th Cir. 1978). But, the issues need not have been explicitly decided; the doctrine also applies to those issues decided by "necessary implication." ***In re Felt***, 255 F.3d 220, 225 (5th Cir. 2001). In other words, even when issues have not been expressly addressed in a prior decision, if those matters were "fully briefed to the appellate court and . . . necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case." ***Id.***

With these premises in mind, we turn to whether the trial court's second summary judgment was an erroneous revisiting of issues already decided by this Court in Alpha/Omega's prior appeal. In its first summary-judgment order, the trial court specifically

6

noted that its granting summary judgment on Alpha/Omega's conversion and tortious-interference claims was predicated on its conclusion that Prudential owned the book of business.

On appeal of that first summary judgment to this Court, Alpha/Omega argued that a genuine issue of material fact existed about the ownership of the book of business. In part, it reasoned that Prudential's admission that Article 21.11-1 of the Texas Insurance Code applied to its relationship with Alpha/Omega was important because Article 21.11-1 only applies if Alpha/Omega—not Prudential—owns the book of business.[4]

In response, the vast majority of Prudential's brief was dedicated to the argument that its contract with Alpha/Omega unambiguously granted it ownership of the book of business. It also argued that its compliance with Article 21.11-1 was voluntary, not mandatory, because article 21.11-1 does not apply if it owns the book of business. Only two sentences of Prudential's brief were dedicated to the alternative argument that ownership of the book was irrelevant because "even if [Alpha/Omega] had owned the book of business, it received all that it was legally entitled to receive under the law and cannot be heard to complain."

This Court's opinion reversing the first summary judgment on

---

[4] Section 21.11-1 does not apply to an agency's termination "where the policies and the insurance business is owned by the company and not by the agent." TEX. INS. CODE. ANN., art. 21.11-1 § 3.

7

the conversion and tortious-interference claims also focused solely on the trial court's finding that Prudential owned the book of business. And we characterized the parties' arguments as limited to this issue:

> Alpha/Omega alleges that Prudential converted Alpha/Omega's book of business and tortiously interfered with Alpha/Omega's contracts with its own clients. Prudential counters that it owns the book of business and therefore cannot have converted its own property or tortiously interfered with its own contracts.

Because we concluded that "the question of ownership of the book of business is a contested fact issue," we vacated the trial court's judgment as to Alpha/Omega's conversion and tortious-interference claims.

In Prudential's motion for panel rehearing, it focused for the first time on the argument that ownership of the book of business was irrelevant. Specifically, it asserted that it had conclusively established that, regardless of who owned the book of business, (1) its actions were privileged and justified, (2) Alpha/Omega could not establish its conversion claim, and (3) Alpha/Omega was paid all it was due under the Texas Insurance Code. And, for the first time on rehearing, Prudential argued that "the rights of a terminated agency derive solely from statutorily created obligations" under the Texas Insurance Code. In other words, Prudential contended that Alpha/Omega could only claim damages

8

under article 21.11-1, and, because Prudential complied with article 21.11-1, Alpha/Omega has already received the only remedy it could arguably be entitled.

On remand, Prudential filed another motion for summary judgment in the trial court, making the identical arguments it made in its motion for rehearing. The trial court granted the motion, noting that Alpha/Omega had not shown that Prudential violated the Texas Insurance Code. In addition, the Court concluded that the "Texas Insurance Code remedy subsumes all common law causes of action that might arise from an agreement such as that between the plaintiff and Prudential." Consequently, the court concluded, because "the contractual agreement between the plaintiff and Prudential is governed by state statutory law and not state common law[,] . . . any suit filed by the plaintiff is conscribed by the statutorily created remedies."

Based on our review of these prior proceedings in this case, we cannot conclude that the issues addressed by the trial court's second summary judgment were decided, either explicitly or by necessary implication, by our prior decision reversing the trial court's first summary judgment. The trial court's first summary judgment, the parties' original briefs to this court, and our prior opinion all framed the relevant issue as being the ownership of the book of business. While we could have gone beyond the scope of the summary-judgment order and the parties' briefs to independently assess the relevance of the ownership issue, our opinion does not

reflect that we did so. Thus, because the law of the case doctrine only applies to issues we actually decided, rather than issues that we could have decided, *Morrow*, 580 F.2d at 1290, we hold that our prior opinion addressing only the narrow issue of who owned the book of business did not bar the trial court from subsequently granting summary judgment on other grounds.

We likewise reject Alpha/Omega's argument that our denial of Prudential's motion for panel rehearing amounted to an express decision on the merits of the arguments the motion presented. Our denial of a motion for panel rehearing does not amount to a decision on the merits. *Cf., Fernandez v. Chardon*, 681 F.2d 42, 51 n.7 (1st Cir. 1982) ("[T]he denial of a petition for rehearing can have no greater precedential effect than the denial of a petition for certiorari, which is to say none."), *aff'd*, 462 U.S. 650 (1983); *Crider v. Keohane*, 526 F. Supp. 727, 728 (W.D. Ok. 1981) ("[T]he failure of the Petition for Rehearing does not imply any judgment on the merits of this issue."). Accordingly, because neither our prior opinion nor our denial of Prudential's motion for rehearing rendered the trial court's second summary judgment improper under the law of the case doctrine, we must consider whether the summary judgment was improper on any other grounds.

## IV. THE TEXAS INSURANCE CODE

The trial court's second summary-judgment order states, in

10

pertinent part:

> [T]he compelling question presented by Prudential is whether any cause of action survives the plaintiff's failure to obtain a finding from the state insurance commission that Prudential violated stated law when it cancelled the insurance agency agreement between the plaintiff and Prudential. Prudential asserts, and it is undisputed, that state law provides the formula and method for resolving this type dispute. And, Prudential has paid statutory obligations.
>
> It is undisputed that the sum of the plaintiff's tort claims arises from Prudential's termination of the insurance agency agreement between the plaintiff and Prudential. Thus, assuming that Article 21.11-1 of the Texas Insurance Code is applicable, an administrative resolution of the plaintiff's termination claim, combined with a failure to secure an administrative finding that Prudential violated state law, bars claims of misrepresentation, fraud, tortious interference, conversion, negligence, malice, and attorney's fees. *See, **Linick v. Employers Casualty***, 822 S.W.2d 297 (Tex. App.—San Antonio 1991, no writ); ***Metropolitan Property and Liability Ins. Co. v. Bridewell***, 933 S.W.2d 358 (Tex. App.—Waco 1996, no writ).
>
> This court is also of the opinion that the Texas Insurance Code remedy subsumes all common law causes of action that might arise from an agreement such as that between the plaintiff and Prudential. Stated differently, the Court is of the opinion that the contractual agreement between the plaintiff and Prudential is governed by state statutory law and not state common law. *See* Tex. Ins. Code, Art. 21-11-1; 21.49-2B; *see also* Art. 21.11-1 § 7. Thus, any civil suit filed by the plaintiff is conscribed by the statutorily created remedies. ***Id.***

Our review of the Texas Insurance Code provisions and the two cases on which Prudential and the trial court rely leads us to a different conclusion.

11

Article 21.11-1 of the Texas Insurance Code governs the cancellation of agency contracts by fire and casualty insurance companies. It provides notice and commission payment requirements that insurance companies must follow when terminating an agency contract. TEX. INS. CODE ANN., art. 21.11-1 § 1 (a)-(b). Article 21.49-2B also requires insurance companies to give notice to the insured of nonrenewal for that nonrenewal to be effective. TEX. INS. CODE ANN., art. 21.492B, § 5. The parties here do not dispute that Prudential complied with all these requirements.

However, Alpha/Omega asserts that its conversion and tortious interference claims are not based on violations of these Texas Insurance Code provision. Rather, Alpha/Omega asserts, its complaint is premised on Prudential's other actions. Specifically, Alpha/Omega complains about Prudential's converting its book of business and its soliciting Alpha/Omega's customers to place their insurance with another carrier.

We agree that Alpha/Omega's claims are not based on statutory violations. Thus, Prudential's and the trial court's reliance on **Linick v. Employers Mut. Cas. Co.**, 822 S.W.2d 297 (Tex. App.—San Antonio, no writ) is misplaced.

In **Linick**, the issue was whether "the judiciary or an administrative board, i.e., the State Board of Insurance of Texas, has primary jurisdiction over a *civil suit* for damages brought by a local recording agent against an insurance company for failing to

12

comply with the Texas Insurance Code and an Agency-Company Agreement." 822 S.W.2d at 298. The primary jurisdiction doctrine was at issue because *Linick* involved a prior statutory provision, not applicable to this case, that stated:

> If it is found, after notice and an opportunity to be heard as determined by the board, that an insurance company has violated [Article 21.11-1], the insurance company shall be subject to a civil penalty of not less than $1,000 nor more than $10,000, and it shall be subject to a civil suit by the agent for damages suffered because of the premature termination of the contract by the company."

*Id.* (quoting TEX. INS. CODE ANN, art. 21.11-1 § 5 (amended 1993)). It was undisputed in *Linick* that the plaintiff's *only* claim was one for "damages statutory authorized by article 21.11-1," and that "such a suit does not exist at common law." *Id*. at 300 (emphasis added). Thus, the sole issue was whether the plaintiff, before bringing suit to enforce this statutory remedy, had to exhaust its administrative remedies as contemplated by article 21.11-1 § 5 and plead all conditions precedents were satisfied before bring suit. *Id.* at 299. Ultimately, the court concluded that the plaintiff's "failure to follow the statutorily required procedures resulted in the trial court's lack of jurisdiction over appellant's cause of action." *Id.*

Here, the trial court's reliance on *Linick* is incorrect for two reasons. First, unlike in *Linick*, the plaintiff here is not asserting a cause of action based on a violation of the Texas

13

Insurance Code. In fact, Alpha/Omega emphatically denies that its complaint is about premature termination of its agency agreement or Prudential's failure to comply with the Texas Insurance Code.

Second, the Texas Insurance Code provision that the *Linick* court interpreted as requiring a board finding of a statutory violation before bringing suit was expressly changed by the Texas Legislature, in its very next session, to provide that "[a]ny agent who has sustained actual damages as a result of a company's violation of this article may maintain an action against the company, *without regard to* whether or not there has been a finding by the board that there has been a violation of this article." TEX. INS. CODE Ann., art. 21.11-1 § 7 (emphasis added). Despite this change, the trial court here inexplicably framed the issue as "whether any cause of action survives the plaintiff's failure to obtain a finding from the state insurance commission that Prudential violated state law." Then, citing *Linick*, the court concluded that "an administrative resolution of the plaintiff's termination claim, combined with a failure to secure an administrative finding that Prudential violated state law, bars claims of misrepresentation, fraud, tortious interference, conversion, negligence, malice, and attorney's fees." While this order is somewhat ambiguous, it appears that the court applied the statutory administrative exhaustion requirement announced in *Linick* to Alpha/Omega's claims, even though the Texas Legislature had

14

clarified that there was no administrative exhaustion requirement. In other words, the Court imposed a requirement from the Texas Insurance Code that was no longer the law.[5]

We also find the trial court's reliance on ***Metropolitan Property and Liab. Ins. Co. v. Bridewell***, 933 S.W.2d 358 (Tex. App.—Waco, 1996, orig. proceeding) unpersuasive. The only issue in *Bridewell* was whether a terminated insurance agency could be forced to arbitrate its common-law and statutory claims with its contract claim that was the subject of an arbitration agreement. 933 S.W.2d at 360. The ***Bridewell*** court held that the claims must be arbitrated together because, under the FAA, any doubts about whether a claim falls within the scope of an arbitration agreement must be resolved in favor of arbitration. *See **id.*** at 361. We fail to see how ***Bridewell***'s conclusion that the plaintiff's tort, statutory, and contract claims had to be arbitrated together supports the trial court's conclusion in this case that the Texas Insurance Code "subsumes all common law causes of action."[6]

---

[5]  *See* Act of May 8, 1993, 73rd Leg., ch 685, § 5.04, 1993 Tex. Gen. Laws 2562, 2603 (codified at TEX. INS. CODE ANN., art. 21.11-1 § 6-7) (amending article 21.11-1 to clarify that there is no administrative exhaustion prerequisite to an agent's bringing suit).

[6]  Notably, ***Bridewell***, decided five years after ***Linick***, did *not* hold that the plaintiff's tort claims were subsumed by its statutory claims, as Prudential urges us to hold here. It merely concluded that the claims should be arbitrated together.

## V.   CONCLUSION

In sum, we hold that the law of the case doctrine did not bar the trial court's second summary judgment.  However, we conclude that the trial court erred by holding (1) that Alpha/Omega's failure to secure a finding from the board that Prudential had violated the Texas Insurance Code was fatal to its claims, and (2) that the Texas Insurance Code remedy for violations of the Code subsumes Alpha/Omega's conversion and tortious interference claims. Accordingly, we vacate the trial court's summary judgment and remand Alpha/Omega's conversion and tortious interference claims to that court.[7]

---

[7] Nothing in this opinion shall preclude the trial court from considering summary judgment on other grounds not addressed here or in our prior opinion.