# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 18, 2023

Lyle W. Cayce
Clerk

————————

No. 22-30602

————————

IN THE MATTER OF AKD INVESTMENTS, L.L.C.

*Debtor*,

AKD INVESTMENTS, L.L.C.,

*Appellant*,

*versus*

MAGAZINE INVESTMENTS I, L.L.C.,

*Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-619

———————————————————————

Before DUNCAN and WILSON, *Circuit Judges*, and MAZZANT, *District Judge*.[*]

CORY T. WILSON, *Circuit Judge*:

In November 2014, AKD Investments, LLC (AKD), filed for bankruptcy. At that time, Magazine Investments I, LLC (Magazine), held

---

[*] District Judge in the Eastern District of Texas, sitting by designation.

the notes on AKD's main asset, a building on Magazine Street in New Orleans, Louisiana.  After Magazine resumed foreclosure proceedings, AKD sought permission from the bankruptcy court to obtain financing to pay off Magazine's notes and thereby avoid the looming foreclosure sale of the building.  In a February 2015 order, the bankruptcy court authorized the transaction, and the parties performed under the order.  The bankruptcy court confirmed AKD's reorganization plan in April 2017.  In August 2020, AKD brought this action against Magazine as a core proceeding within the still-open bankruptcy case.  AKD alleged that it had overpaid Magazine in 2015 and sought to recoup the overpayment.  But the bankruptcy court granted summary judgment to Magazine, concluding that AKD's claim was barred by the law-of-the-case doctrine because the amount AKD paid Magazine had been established by the court's 2015 order.  AKD appealed, and the district court affirmed.  AKD then timely appealed to our court.

AKD contends that the bankruptcy court erred in applying the law-of-the-case doctrine because the 2015 order did not actually decide the amount AKD owed Magazine.  The order is ambiguous on that point.  But deferring to the bankruptcy court's reasonable interpretation of its order, we nonetheless affirm.

## I.

AKD owned a building on Magazine Street in New Orleans (the Property).  AKD obtained two mortgages on the Property, one for $1.4 million and one for $100,000, both from a local bank.[1]  AKD failed to make timely payments on the notes.  Magazine acquired the non-performing notes

---

[1] AKD obtained its mortgages from Hancock Bank of Louisiana.  Not long after, Hancock Bank of Louisiana became Whitney Bank, which then held AKD's notes until they were sold to SummitBridge Credit Investments IV, LLC, in December 2012.

and initiated foreclosure proceedings against AKD in Louisiana state court in July 2014.  The state court scheduled a foreclosure sale for November 13, 2014.

On the eve of the scheduled sale, AKD filed for Chapter 11 bankruptcy.  This triggered an automatic stay preventing any collection efforts against AKD or the Property.  *See* 11 U.S.C. § 362(a).  The foreclosure sale was cancelled.  A few days later, Magazine sought to lift the stay so that foreclosure proceedings could continue.  The bankruptcy court granted Magazine's request in December 2014.  *See* 11 U.S.C. § 362(d) (authorizing such motions).  As a result, the foreclosure sale was reset for February 26, 2015.

Bankruptcy proceedings continued simultaneously.  The bankruptcy court ordered Magazine to file a proof of claim for AKD's outstanding debt, including an estimated "payoff" amount.  Magazine filed its proof of claim on February 2, 2015, specifying that AKD owed Magazine $2,174,844.27 as of January 31, 2015, with interest and expenses continuing to accrue.

Seeking to forestall the scheduled foreclosure sale, AKD sought financing to satisfy its debt with Magazine.  AKD found a willing lender—James M. Huger—and reached an agreement with Huger, memorialized in a loan commitment letter dated February 19, 2015.  The commitment letter specified that Huger would loan AKD $2,225,000 to pay, among other things, "the then outstanding amount of the loan" owed to Magazine in order "to pay off [the] first mortgage note[s] held by Magazine."  The deal was conditional upon the bankruptcy court's approval.

AKD filed an emergency motion seeking approval under 11 U.S.C. § 364(e) on February 20, 2015.  AKD's motion included the payoff amount from Magazine's proof of claim but emphasized that AKD "disputed the amount of Magazine's claim."  Because of the dispute, AKD requested that

No. 22-30602

Huger loan proceeds of approximately $2,175,000 "be held in escrow" pending resolution of the dispute.

Magazine opposed AKD's motion, contending the amount to be placed in escrow was insufficient. Because it was pegged to the payoff amount in the proof of claim, the proposed escrow amount did not include funds to cover the interest and attorney's fees that had accrued since January 31 and that would continue to accrue while in escrow. *Id.* Magazine averred that, as of February 25, 2015, Magazine's claim was at least $2,177,817.10.[2]

In response to Magazine's opposition, AKD amended its motion for approval of the transaction. The amended motion dropped any reference to a dispute over the amount owed. And it no longer sought to have funds held in escrow; instead AKD proposed to use the Huger loan proceeds, as well as bank deposits and rental income as necessary, to pay Magazine "*in full* the amount of the claim of Magazine without prejudice *immediately upon closing of the loan*." Magazine continued to oppose AKD's motion, even as modified.

On February 25, 2015, the day before the scheduled foreclosure sale, the bankruptcy court held a hearing to consider AKD's amended motion. The next day, the court entered an order granting the motion (the Order). Specifically, the Order authorized AKD "to obtain credit and borrow from James M. Huger $2,225,000 . . . pursuant to the terms and conditions of the loan commitment letter," and then "to pay Magazine . . . $2,181,919.72 by cashier's check in immediately available funds . . . on or before 11:30 am central time on February 26, 2015." Upon closing, Huger would receive a

---

[2] This estimate also excluded the commission Magazine would owe the sheriff, pursuant to Louisiana law, if the bankruptcy court ordered cancellation of the writ of seizure on the Property.

first-priority lien against the Property, and all liens held by Magazine would be cancelled, as would the foreclosure sale.[3]   The parties performed according to the Order's terms.

Two years later, in April 2017, the bankruptcy court confirmed AKD's plan of reorganization.

In August 2020, AKD filed this action as a core proceeding within its bankruptcy case.  AKD alleged that it had paid Magazine "excessive attorney's fees, interest charges, and other charges and expenses" in the 2015 transaction and sought to recover sums allegedly overpaid.  After discovery, Magazine filed a motion for summary judgment, which the bankruptcy court granted.  The court concluded that AKD's action was barred by the law-of-the-case doctrine because the Order set the amount AKD paid Magazine.  The bankruptcy court entered final judgment in favor of Magazine and dismissed the action.

AKD appealed to the district court, which affirmed.  Then AKD timely appealed to this court.

## II.

We review a "bankruptcy court's grant of summary judgment *de novo*, using the same standard employed by the district court." *In re Shcolnik*, 670 F.3d 624, 627 (5th Cir. 2012).  In adversarial proceedings in bankruptcy, Rule 56 of the Federal Rules of Civil Procedure governs review of summary judgment motions.  F. R. Bankr. P. 7056.  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to

---

[3] The Order also directed that Magazine would not be liable for any commission due the sheriff in relation to cancellation of the foreclosure sale. *See supra* n.2.  Instead, "[s]hould any additional costs or commissions be owed, the Sheriff sh[ould] file a proof of claim in" AKD's bankruptcy case.

No. 22-30602

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

While we usually review the bankruptcy court's interpretation of its own orders *de novo*, we "defer to the bankruptcy court's reasonable resolution of . . . ambiguities in those documents." *In re Nat'l Gypsum Co.*, 219 F.3d 478, 484 (5th Cir. 2000). "[H]owever, the documents must truly be ambiguous, even in light of other documents in the record, before we will defer." *Id.*

## III.

The law-of-the-case doctrine "is based on the salutary and sound public policy that litigation should come to an end." *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967). Despite its importance, the doctrine "is an amorphous concept" with no "precise requirements." *Arizona v. California*, 460 U.S. 605, 618 (1983). Generally, "when a court decides" an issue, "that decision should continue to govern the same issues in subsequent stages of the same case." *Id.* The doctrine has an important limitation: It "applies only to issues that were *actually decided*, rather than all questions in the case that might have been decided but were not." *Alpha/Omega Ins. Servs. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (emphasis added). But "the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.'" *Id.* (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)).

The parties dispute whether the bankruptcy court properly applied the law-of-the-case doctrine in this case. They spar over whether the bankruptcy court actually decided the payoff amount in the Order, such that the doctrine bars AKD's claim to recover its alleged overpayment to Magazine. AKD contends that "neither the correctness of the amount AKD paid Magazine nor the merits of AKD's claim[] to recover[] the amount of

6

No. 22-30602

its overpayment" were actually decided in the Order.  Magazine counters that the Order "decided the issue."

AKD's argument hangs on a single phrase in the Order:  "without prejudice."  The Order provides "that immediately upon closing of the Huger [l]oan, [AKD] is authorized to pay Magazine . . . the Magazine [p]ayoff by the [p]ayoff [d]eadline without prejudice and without conditions by cashier's check as provided above from the proceeds of the Huger [l]oan."[4]  According to Black's Law Dictionary, the phrase "without prejudice":

> import[s into a transaction] that the parties have agreed that, as between themselves, the receipt of the money by one, and the enjoyment by the other, shall not . . . have any legal effect upon the rights of the parties" and "that such rights will be as open to settlement by negotiation or legal controversy as if the money had not been turned over by the one to the other.

*Without Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019).  AKD reasons that the inclusion of "without prejudice" in the Order thus means that the Order did not determine "the correct amount [AKD] owed to Magazine."

By contrast, Magazine contends that the Order actually decided the final, correct payoff amount.  Magazine points to two sections of the Order that emphasize the finality of its terms as evidence that the Order did not leave the payoff amount open to subsequent challenge.  The first provides:

---

[4] AKD also points out that it "specifically stated in its original motion for authorized [sic] to refinance its debt [that] it disputed the amount of Magazine's claim."  But as the district court pointed out, "this was not the motion that was granted."  Instead, "[a]ny language in the first motion regarding a potential dispute . . . was removed [by AKD] upon amendment [and] is therefore of no moment."  But AKD included in its amended motion a request that the payment be made "without prejudice."

that the [c]ommitment [l]etter and all other documents, agreements and instruments necessary to effectuate and consummate the transaction contemplated by the [c]ommitment [l]etter together with the provisions and terms of this Order are specifically enforceable against and binding upon, and shall not be subject to rejection or avoidance, by [AKD], and any assigns, including without limitation an[y] trustee, responsible person, estate administrator, representative or similar person hereinafter appointed for or in connection with [AKD]'s estate or affairs in this or any subsequent or controverted case under the Bankruptcy Code involving [AKD].

And the second details:

that the terms and conditions of the [c]ommitment [l]etter are an integral part of the refinancing and that, in view of: (i) the good faith of the lender and of Magazine Investments I, LLC, (ii) the reasonableness of the terms of the [c]ommitment [l]etter, and (iii) the fact that the terms and conditions of the [c]ommitment [l]etter are integral part of the refinancing, the reversal or modification on appeal or otherwise of this Order shall not affect the validity or enforceability of the payoff of the debt of Magazine Investments I, LLC or the validity or enforceability of the Huger [l]oan or the validity, enforceability, or priority of the lien or mortgage against the Property granted to James M. Huger or his assign(s) pursuant to this Order or any of the terms or conditions of the [c]ommitment [l]etter . . . .

Read in isolation, the sections of the Order cited by each side somewhat support their proposed interpretations of the Order. AKD correctly points out that the Order says that AKD's payment to Magazine was made "without prejudice," seemingly meaning that the terms of payment remained open for legal controversy. Yet the two sections cited by Magazine clearly state that the Order and its terms—presumably including

the payoff amount to Magazine—are "specifically enforceable against and binding upon, and shall not be subject to rejection or avoidance by," AKD. Read as a whole, the Order appears internally inconsistent about whether the payoff amount was "without prejudice" (as AKD contends) or "specifically enforceable against and binding upon" AKD (as Magazine contends). Neither party offers a compelling way to harmonize the Order *in toto*, making sense of the apparent contradiction.

AKD suggests that we could resolve the contradiction by reading the two sections cited by Magazine as limited only to securing the liens granted under the Order. Specifically, according to AKD, those two sections "addressed only the effectiveness, enforceability, and perfection of the security interests granted to Huger to secure the Huger loan" and therefore do not render unreviewable the amount AKD paid Magazine. But this suggested reading conflicts with the text of the relevant sections of the Order, which are plainly not limited to Huger's lien. Instead, the first section extends broadly to "the [c]ommitment [l]etter and all other documents, agreements, and instruments necessary to effectuate and consummate the transaction contemplated by the [c]ommitment [l]etter together with the provisions and terms of this Order." And the second section specifically emphasizes "the validity [and] enforceability of the payoff of the debt of Magazine" in addition to the validity of Huger's lien. Accordingly, AKD's proposed reading is untenable.[5]

---

[5] AKD relies on out-of-circuit cases regarding 11 U.S.C. § 364(e) to support its preferred reading. *See Shapiro v. Saybrook Mfg. Co.*, 963 F.2d 1490, 1493 (11th Cir. 1992); *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1355 (7th Cir. 1990). But we have never read § 364(e) to focus myopically on liens. Instead, we have read it as a stay requirement. *See In re TMT Procurement Corp.*, 764 F.3d 512, 519 (5th Cir. 2014) ("A failure to obtain a stay of an authorization under [§ 364(e)] moots an appeal of that authorization[.]"); *see also In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009)

No. 22-30602

Magazine suggests that "without prejudice" is of no moment here because it is insufficiently specific to reserve any rights. As support, Magazine cites two Louisiana intermediate appellate court opinions. *See Barnett v. La. Med. Mut. Ins. Co.*, 51908 (La. App. 2 Cir. 5/23/18), 248 So. 3d 594; *Advanced Com. Contracting v. Powell Ins. Agency*, 09-758 (La. App. 5 Cir. 12/29/09), 30 So. 3d 851. We fail to see the relevance of these cases, which pertain to the interpretation of reservation-of-rights clauses in private settlement agreements under state law, to our immediate task of interpreting an order entered by the bankruptcy court. Regardless, we hesitate to agree with Magazine that the phrase "without prejudice" is without meaning. Rather, we "lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012) (citations omitted). So we endeavor to give meaning to all the words written into the Order by the bankruptcy court. But Magazine is right insofar as the scope of "without prejudice" is the source of ambiguity in the Order.

Reviewing the Order, the Huger commitment letter, and the bankruptcy court record, we find nothing that clarifies the scope and import of "without prejudice" as used in the Order. Thus, the Order is "truly . . . ambiguous, even in light of other documents in the record." *In re Nat'l Gypsum Co.*, 219 F.3d at 484. In these circumstances, we apply a deference rule: As long as the bankruptcy court reasonably resolved the ambiguity as it construed the Order in weighing Magazine's motion for summary judgment in this case, we defer to that court's interpretation. *Id.*

––––––––––––––––––––––––––––––

(Section 364(e) "prevent[s] the appellate reversal of an order to sell property or obtain post-petition financing unless such orders were stayed pending appeal.").

The bankruptcy court resolved the ambiguity by concluding that the Order specifically decided that AKD owed Magazine $2,181,919.72. This was reasonable. When the bankruptcy court issued the Order in 2015, it had before it Magazine's proof of claim, including its suggested payoff amount as of January 31, 2015, and a breakdown of how Magazine calculated that amount; Magazine's updated estimate as of February 25; the relevant mortgage documents; and the parties' stipulations and discussion during the hearing on the motion. Based on this information, the resulting Order set the payoff amount at $2,181,919.72, a very specific number. To be sure, the full scope of "without prejudice" remains unclear, but in granting Magazine summary judgment in this case, the bankruptcy court reasonably determined that the phrase—whatever its scope—did not apply to the payoff amount to Magazine. The court's interpretation of its prior Order is entitled to deference.

AKD disagrees, contending that the bankruptcy court's interpretation conflicts with *Alpha-Omega Insurance Services, Inc. v. Prudential Insurance Co. of America*, where our court stated:

> [E]ven when issues have not been expressly addressed in a prior decision, if those matters were "fully briefed to the appellate court and . . . necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case."

272 F.3d 276, 279 (5th Cir. 2001) (all alterations except first in original) (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)). Based on *Alpha-Omega*, AKD asserts that the Order could not have decided the payoff amount because "neither party briefed" "the correct [payoff] amount" "either in connection with the refinancing motion or elsewhere" "in the main bankruptcy case." But AKD's contention miscasts the record.

No. 22-30602

Magazine briefed the correct payoff amount in the main bankruptcy case, both in its proof of claim and in its opposition to AKD's motion. Moreover, AKD misconstrues *Alpha-Omega*. That case specifically does *not* limit a court's ability to decide issues presented but not fully briefed. *See Alpha-Omega*, 272 F.3d at 281 (recognizing that the court "could have gone beyond the scope of the . . . parties' briefs to independently assess the . . . issue"). Rather, *Alpha-Omega* reiterates our rule from *In re Felt* that an issue briefed on appeal that is a "necessary prerequisite[]" to an issue actually decided in the appellate opinion is the law of the case, even if the appellate court's opinion does not explicitly decide the prerequisite issue or grapple with the arguments in the briefs. *In re Felt*, 255 F.3d at 225–26. Here, though, we defer to the bankruptcy court's reasonable determination that the Order in fact determined the correct value for the payoff amount, whatever the scope of the parties' briefs, and whatever the scope of "without prejudice" as used in the Order.[6]

## IV.

The bankruptcy court's 2015 Order is internally contradictory. Its meaning is therefore ambiguous as to the question at hand: Whether the Order actually decided the correct amount that AKD owed to Magazine. Accordingly, we defer to the bankruptcy court's reasonable interpretation of its Order—that it did—and affirm its invocation of the law-of-the-case doctrine to grant Magazine summary judgment as to AKD's claim here.

AFFIRMED.

---

[6] Because we affirm on law-of-the-case grounds, we need not reach whether AKD's instant claim is also barred by res judicata or prior settlement.